JOSEPH T. TORRENCE

*v.*

SUSAN M. SHEDD *et al.*

'194:31 LRA 58:

*Filed at Ottawa June 15, 1895.*

1. DEEDS—*all legal and equitable interests will pass by.* Whatever title a grantor holds, whether legal or equitable, and including his interest under an executory contract, is transferred by his deed to a grantee, although the deed does not specify the contract.

2. CONTRACTS—*construed in the light of circumstances.* A court will construe a contract in the light of the circumstances surrounding the parties and of the objects which they evidently had in view.

3. SAME—*vendor and purchaser—when mutually binding.* Both parties are bound by a contract declared mutually binding on heirs, administrators and assigns, and stating that it is mutually covenanted that "as soon as" one procures and conveys, or causes to be conveyed, to the other a good title to an interest in a tract of land the other will convey to him a certain quantity of such land, and the former, on procuring title to such interest, can be compelled to convey it to the other.

4. VENDOR AND PURCHASER—*covenant to convey upon procuring title —construction.* A contract binding a person to convey to another certain premises so soon as he "procures or causes to be procured a good title," which provides that the covenants are mutually binding on the respective heirs, administrators and assigns of the parties, is not limited to a temporary purpose to procure title by appointment of a conservator for an insane owner, but extends to title procured from his heirs after his death.

5. DEFINITIONS—*the word "assigns" in land contract.* The word "assigns" in a land contract binding heirs, administrators and assigns, means not only assignees of the contract, but grantees of the land.

6. TRUSTS—*when grantees are chargeable with a trust.* Grantees of either party, with notice of a contract binding one party to convey a part of a tract of land to the other in consideration of his procuring title for the former to an undivided interest, are chargeable with a trust in favor of the other party or his grantees.

7. TAX DEED—*when not a prima facie title under act of 1835.* A *prima facie* tax title, under the statute of 1835, is not shown unless it appears that the purchaser had complied with the constitutional provision concerning notice to the owner of the land of the tax sale, and of the time when the right to redeem it would expire.

APPEAL from the Superior Court of Cook county; the
Hon. PHILIP STEIN, Judge, presiding.

CHARLES M. OSBORN, and SAMUEL A. LYNDE, for appellant:

A party cannot compel the specific performance of a
contract in equity, unless he shows that he himself has
specifically performed, or can justly account for the reason of his non-performance. *Scott* v. *Shepherd*, 3 Gilm. 483;
*Stow* v. *Russell*, 36 Ill. 18; *Board of Supervisors* v. *Henneberry*,
41 id. 180; *Cronk* v. *Trumble*, 66 id. 428.

If, for any cause, even arising after the contract is
concluded, it becomes wholly impossible for the plaintiff
to perform any part of the contract on his part, he can
not enforce a performance against the defendant. Pomeroy on Specific Per. secs. 327, 354.

The only exception to this rule is where the impossibility extends only to a part of the contract, and that
a non-essential, formal part. Fry on Specific Per. secs.
621, 622.

When the defendant has made the performance of the
contract impossible, a decree will not be rendered for its
specific performance. Pomeroy on Specific Per. sec. 293;
*Wollensak* v. *Briggs*, 119 Ill. 453.

Equity regards that as done which, in good conscience,
ought to be done. Pomeroy's Eq. Jur. sec. 368; Pomeroy
on Specific Per. sec. 314.

A bill in chancery lies for partition notwithstanding
an adverse possession, unless it has been continued sufficiently long to bar a recovery under the Statute of
Limitations. *Hoey* v. *Goings*, 13 Ill. 95; *Cartwright* v. *McGown*, 121 id. 407.

FREDERIC ULLMANN, and WILLIAM RITCHIE, for appellees:

The courts will always construe a contract as mutually binding where its language does not absolutely
forbid such interpretation. Bishop on Contracts, sec. 417.

In *Preble* v. *Abrahams*, 88 Cal. 248, plaintiff, in writing, agreed to sell to defendant, for $125 per acre, certain land, and upon payment of said sum to deliver to defendant a good deed therefor. It was held that this was mutually binding, and obligated defendant to purchase as well as it bound plaintiff to sell. So a bond obligating plaintiff to convey for a certain price, but signed by the plaintiff only, was, if accepted, held binding on defendant also to buy, so that upon tender of a deed plaintiff could recover the purchase price thereon. *Vilas* v. *Dickinson*, 13 Wis. 488.

One who accepts a deed containing stipulations to be performed by himself may be sued thereon, though his own name is not signed thereto. *Schumacker* v. *Sibert*, 18 Kan. 112.

A covenant to convey after-acquired title runs with the land. *Phelps* v. *Kellogg*, 15 Ill. 131; *Bennett* v. *Walker*, 23 id. 97; 19 Am. & Eng. Ency. of Law, 997, *et seq.*

And it is no objection to this rule that the land may be conveyed, subsequently, to several different parties. 19 Am. & Eng. Ency. of Law, 1005.

The deeds from Haines, though quit-claims, passed all covenants running with the land. All who accepted title and possession thereunder became subject to like covenants. *Brady* v. *Spurck*, 27 Ill. 478; *Morgan* v. *Clayton*, 61 id. 35.

In *Elston* v. *Kennicott*, 46 Ill. 187, it was plainly intimated that the tax deed would suffice if supported by a judgment and precept, because such judgment and precept would show authority to sell, though possibly not also authority to execute or deliver the deed. The defect necessary to deprive the deed of its character as evidence, if supported by proof of judgment and precept, is a defect apparent upon the face of the deed. *Moore* v. *Brown*, 11 How. 414; *Pillow* v. *Roberts*, 13 id. 478; *Redfield* v. *Parks*, 132 U. S. 250.

D. P. DOYLE, also for appellees.

FLOWER, SMITH & MUSGRAVE, for appellee John T. Chumasero.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the second hearing of this cause we said:

"This was a bill brought by the appellant on the 29th day of August, 1881, for partition of a certain tract of land in Cook county, known as the north quarter of section 7, township 37, north, range 15, east of the third principal meridian, containing about one hundred and forty-three acres. On the first hearing the court entered a decree dismissing the bill, and the complainant appealed to this court, where a judgment was entered reversing the decree and remanding the cause for another hearing. (See *Torrence* v. *Shedd,* 112 Ill. 466.) A statement of the leading facts involved in the case will be found in the opinion of the court when the case was before us on the former appeal, and it will not be necessary to repeat them here, except so far as new facts were developed on the last hearing.

"Upon looking into the record when the case was here before it will be found that appellees contended, first, that the deed from Edward Sorin to the complainant, under which he claimed title to the property, was invalid because the agreement in pursuance of which it was made was, as alleged, champertous; second, that the deed from Edward Sorin to James H. Bowen of April 25, 1871, under whom the defendants claimed title, was in such form that it passed to Bowen the title and all interest in the land which Sorin might thereafter acquire; third, that the Onahan contract, so-called, of the 29th of January, 1876, was binding on Sorin and that appellant was concluded by it. As to these positions it was then said: 'We have carefully considered these positions, and

after having availed ourselves of all additional lights thrown upon the subject by the petition for a rehearing, and given it our best thought, we are fully satisfied that said positions, and each of them, are not tenable, and they must, therefore, henceforth be regarded as conclusively settled against appellees.' The remanding order left all other questions arising in the record, except the three, open for further consideration upon a second hearing, after the cause should go back to the Superior Court. After the cause was re-docketed in the Superior Court the appellees set up and relied upon a contract executed by Haines and Sorin in 1877, which had not been relied upon on the former hearing. That contract was as follows:

" 'This agreement, made this 8th day of March, A. D. 1877, between John C. Haines, of the city of Chicago, and Edward Sorin, of Notre Dame, Indiana, witnesseth:

" 'Whereas, the said Haines has become seized and possessed of a title in and to an undivided two-thirds of all the north quarter of fractional section 7, town 27, range 15, east, south of Indian boundary line, and I have agreed with the said Sorin that if he will procure and convey to me the outstanding one undivided third of the same property, that I will convey to him all my interest, including the said one-third as well as the two-thirds interest of which I am at present seized, in and to seventeen acres of the said north quarter, to be selected by agreement between them.

" 'Now, therefore, it is mutually covenanted and agreed by and between the said parties, that as soon as Edward Sorin procures, or causes to be procured, a good title to the said outstanding undivided one-third interest, and shall convey, or cause to be conveyed, by good and sufficient deed or deeds of conveyance to the said Haines, the title of the said undivided one-third interest in and to said north quarter, then the said Haines will well and truly convey, or cause to be conveyed, to the said Sorin,

all of said interest, including the interest now held by said Haines as well as the interest of one-third to be so conveyed ·in and to the seventeen acres to be selected and agreed upon between them, and conveyed to said Sorin in his own separate right, and to his heirs and assigns forever.    The covenants are to extend to and be mutually binding on the respective heirs, administrators and assigns of said parties.

" 'Witness the hands and seals of the said Haines and Sorin.

JOHN C. HAINES,<br>By CHARLES J. HAINES, <i>Atty. in fact.</i>'

"The contract was in duplicate, one executed by Haines and delivered to Sorin, the other executed by Sorin and delivered to Haines.    At the time this contract was executed, Edward DeSeille, who owned one-third of the quarter of land in question, resided in Belgium, and was then, and had been for many years, insane.    On September 19, 1877, Haines sold and conveyed, by quit-claim deed, to Susan M. Shedd, a portion of the north quarter, and in February, 1878, he deeded, by quit-claim deed, the remainder to Turpin, the receiver of the Fidelity Bank. On the 17th day of November, 1878, Edward DeSeille died, and his one-third interest in the section of land passed to his sister, Melanie DeSeille, and to the children of his brother, Charles DeSeille.    On the sixth day of March, 1879, Melanie DeSeille conveyed to Sorin the entire section, and in 1881 Sorin acquired, by purchase from the children of Charles DeSeille, their interest in the section of land.

"By these conveyances Sorin acquired the title to the one-third of the section which was originally owned by Edward DeSeille, and on the last hearing of the cause it was claimed by appellees, when Sorin obtained Edward DeSeille's title he became, under the agreement between himself and Haines, a trustee for Haines and his grantees as to the north quarter of the section, and his convey-

ance to Torrence, and Torrence's contract with Brown, were in fraud of their rights. Appellees are entitled to the benefit of that title. The contract between Haines and Sorin was not assigned by Haines to the parties to whom he conveyed the land, and much importance is attached to this fact by appellant in his argument. It is no doubt true that the conveyance from Haines to Mrs. Shedd and Turpin would prevent him from conveying the seventeen acres named in the contract to Sorin; nor could he, after having parted with the title to the land, maintain a bill in his own name against Sorin for a specific performance of the contract. But we are inclined to hold that the deeds made by Haines transferred to his grantees all title and interest he had in the land, regardless of the manner in which he acquired that interest. Whatever title he held, either legal or equitable, obtained by deed or contract, was transferred by the deeds to his grantees, and it was not necessary that the deeds should specify the Sorin-Haines contract. In other words, after the conveyance the grantees of Haines, as respects his title, stood in his shoes, and any relief he was entitled to as against Sorin, his grantees would be entitled to the same relief."

We still entertain the views expressed in the foregoing extract, and re-adopt the same. Before proceeding to a further discussion of the contract of March 8, 1877, it may be well to refer to the course of proceeding after the first decree entered by the Superior Court of Cook County on December 15, 1883, dismissing appellant's bill, was reversed by this Court on April 6, 1885. After the cause had been docketed in the court below, and on May 5, 1885, Sorin, who had not been before that time a party, was allowed to come in and be made a defendant. He filed an answer and cross-bill, alleging that his conveyance to Torrence, the appellant, though absolute in form, was merely made in trust; that appellant held the title in trust for the purpose of instituting proceedings to estab-

lish Sorin's title ; that the agreement made on January
19, 1881, with appellant recited the trust and confidence
so reposed in appellant; that appellant violated his trust
by making an agreement to convey the land to one Brown;
and that Brown had full notice and knowledge that appel-
lant was Sorin's trustee. Appellant and Brown demurred
to the cross-bill which prayed, that whatever title appel-
lant should be found to have might be decreed to belong
to Sorin; and it seems that this demurrer has never been
disposed of. It appears, however, that appellant, Sorin
and Brown have made a settlement of their differences.

We may here remark, that we regard this controversy
as really and in fact a controversy between the present
appellees and Sorin. The proof shows, that appellant
was, at the time he obtained his deed and contract from
Sorin, the latter's agent, and had been his agent for some
years, and had notice of the contract between Haines
and Sorin, and of all the transactions between Sorin and
Bowen in reference to the title of the property, as the
same are hereinafter referred to, and that he was thus
fully informed in regard to all these matters when Sorin
made the deed to him of January 12, 1881, and the con-
tract with him of January 19, 1881. Hence, we think that
the bill for partition herein filed must be treated, in the
consideration of the case, as though it was filed by Sorin.

In May or July, 1885, the cause was removed, upon the
petition of appellant, from the Superior Court to the Cir-
cuit Court of the United States for the Northern District
of Illinois. The latter court, after a long and careful
hearing, and after the granting of a rehearing and a re-
consideration of the cause upon such rehearing, made a
final decree on April 13, 1888, dismissing the bill for want
of equity, as the Superior Court of Cook County had done
in 1883. An appeal was taken by the present appellant
from the said Circuit Court to the Supreme Court of the
United States. The latter tribunal held, that the cause
was improperly removed into the Federal Court and re-

versed the decree of the Circuit Court, with directions to that court to remand the cause to the Superior Court. The cause was again docketed in the Superior Court, and, after a second hearing, was again, and a third time, dismissed for want of equity. From the last decree of dismissal, which was entered on April 27, 1893, the present appeal is prosecuted.

Coming back to the subject of the proper construction of the contract of March 8, 1877, we think that that contract was binding upon Sorin and his assigns, as well as upon Haines and his assigns, and that, when Sorin obtained the title to the one third interest which had been outstanding in Edward DeSeille and at his death became vested in his heirs, it was his duty to tender a conveyance of that interest to Haines or his assigns, and demand that the seventeen acres be selected and conveyed to him. If there had been refusal, upon such tender and demand, to select and convey the seventeen acres, then it was his right to file a bill for the specific performance of the contract, and, in case of a failure to agree upon a selection of the seventeen acres with the grantees of Haines, to obtain a partition of his undivided seventeen acres from the balance of the north quarter of the section. (*Jackson* v. *Horton*, 126 Ill. 566). But when Sorin put the title, which he had obtained, in appellant as his trustee, and the latter commenced a partition proceeding, in which he claimed to own the whole of the one third interest so obtained and ignored the rights of the appellees as grantees from Haines under said contract, neither he nor appellant came into equity with clean hands. They refused to do equity, and were not entitled to the relief which they asked.

In order to determine the intention of the parties in making the contract of March 8, 1877, it may be well to consider the circumstances, leading up to and surrounding the execution of the contract, before examining its terms and language. It is well settled that a court will

construe a contract in the light of the circumstances surrounding the parties and of the objects which they evidently had in view. (*A. B. Dick Co.* v. *Sherwood Letter File Co.*, opinion filed at Ottawa, June, 1895 ; *C., M. & N. R. R. Co.* v. *Nat. Elevator Co.* 153 Ill. 70).

In 1868 James H. Bowen purchased a possessory title to said section seven and went into possession of it, and in 1869 he purchased a tax title from one John Forsythe who had obtained a tax deed thereto. In 1870 Sorin had obtained the government title to nearly two thirds of the section which was a fractional one. In 1871 Bowen and Sorin had a settlement of their respective claims as between themselves, and it was agreed between them that Bowen should have the north quarter of the section and Sorin the south three quarters thereof. Accordingly, by deed dated April 25, 1871, and recorded July 29, 1871, Sorin quit-claimed to Bowen "the following * * * parcel of land * * * towit: in such manner as he may, and to the extent that he has heretofore acquired title thereto, the north quarter of fractional section 7, etc., * * * and all the title of the party of the first part," etc.; and by deed dated July 1, 1871, and recorded July 26, 1871, Bowen quit-claimed to Sorin "the south three fourths of fractional section number seven," etc.

When the case was here before, it was claimed by appellees, that the words, "in such manner as he may," meant "in such manner as he may acquire," and that, by that language, Sorin had agreed to convey to Bowen such title as he might thereafter acquire to the north quarter of the section. The former decision of this court was adverse to such claim, and the language was construed to have another meaning, as will be seen by reference to *Torrence* v. *Shedd*, 112 Ill. 466. There can be no doubt, however, that the words, "to the extent that he has heretofore acquired title thereto," imply the existence of an outstanding title. As it is conceded that the grantees of Bowen subsequently acquired title to all of

the north quarter except one third thereof, we shall treat the outstanding title as exactly one third, and as being in Edward DeSeille or his heirs.

The land was originally owned by an Indian named Ashkum to whom the Government issued a patent, and who conveyed the land by warranty deed in 1836 to Louis DeSeille, a missionary Catholic Priest, in recognition, it is said, of his conversion to christianity. Louis DeSeille died in 1837, and his brother Edward inherited one third of the land as one of his heirs. These heirs regarded the land as belonging to the Church, and hence were willing to convey it without price to Edward Sorin, who was also a Catholic priest. Sorin was interested in getting in the outstanding title to one third of his own south three quarters, and, in doing so, could easily obtain title to one third of Bowen's north quarter. In fact, the deeds afterwards made to him by the heirs of Edward DeSeille were deeds of the whole section.

On July 10, 1871, Sorin rented his south three quarters of the section to Bowen for twenty years at an annual rental of $5000.00 for the first ten years and $10,000.00 for the second ten years with the privilege of renewal for another twenty years at an amount of rent to be fixed by appraisers, with provisions contemplating the construction of wharfs, docks, buildings, depots and the laying of railroad tracks, etc.

On September 1, 1873, Bowen executed a trust deed upon the north quarter of the section to a trustee to secure an indebtedness of $75,000.00 to the Fidelity Savings Bank, and on December 1, 1875, another trust deed to the same trustee to secure an additional indebtedness to the same bank of $50,000.00.

On November 6, 1875, Sorin executed a power of attorney to William J. Onahan, authorizing the latter to make a settlement with Bowen as to the rents and taxes then due and unpaid on his lease, to make such new lease as he might think proper, to direct such legal proceedings

as might be necessary to secure Sorin's rights in section 7, and to sign, seal, execute and deliver such legal papers as might be necessary, etc.

On January 29, 1876, Onahan, under the power, which he supposed that he had by virtue of said power of attorney, executed and delivered to Bowen the following instrument :

"I, Edward Sorin, of Notre Dame, South Bend, State of Indiana, in consideration of the conveyance heretofore made by me to James H. Bowen, of Chicago, State of Illinois, in July, 1871, for the north one-fourth part of fractional section seven (7), township 37, north, range 15, do hereby agree and promise with the said Bowen, that in case of my obtaining at any time hereafter, by deed or release, a greater or better title, or a conveyance or release of any further interest in said north one-fourth of the said section, from any other person or persons, abroad or at home, and particularly from any heir-at-law, or other person claiming any interest in north fourth part as heir or heirs of the late deceased Father Louis DeSeille, that I will, by further assurances, or deed or deeds, convey said interest to said Bowen ; and further, that I will use every reasonable and diligent effort to secure a conveyance from the present or the future claimants of any outstanding interest remaining in any heir of Louis DeSeille, deceased, in Belgium, or elsewhere, so as to perfect said title of said Bowen, so far as I may be able to do so, without pecuniary loss or the payment of any pecuniary consideration to said heirs of Louis DeSeille for said interest.

"Witness my hand and seal, this 29th day of January, A. D. 1876.

EDWARD SORIN,
By W. J. ONAHAN, *his Atty. in fact.*"

On the same day on which this instrument was executed, Bowen under his hand and seal made and annexed thereto a written assignment thereof to John C. Haines,

who was the President of said Bank. Haines had no personal interest in the matter, but acted for the Bank. At the same time, Bowen executed and delivered to Onahan a written instrument, releasing and surrendering to Sorin his possession of the South three quarters of said section, and all his interest therein under said lease. By reason of the agreement of January 29, 1876, made in his name by Onahan, Sorin obtained a cancellation of the lease, possession of the south three quarters of the section, an acknowledgment by Bowen of an indebtedness of $28,164.26, and avoided a tedious litigation. The evidence shows conclusively, that Sorin would never have secured these advantages, but for the reliance which Bowen placed in the Onahan agreement that there should be procured for him the title to the north quarter of the section which was outstanding in the DeSeille heirs ; whereby he would be enabled to dispose of the property for enough to discharge his large indebtedness to the Bank. Shortly thereafter, towit : on March 4, 1876, he made, acknowledged and recorded a plat of a subdivision of said north quarter entitled "James H. Bowen's Addition to South Chicago." It also appears that Onahan, as Sorin's agent, in September of 1876, platted and subdivided the south three quarters of the section, calling it the "Notre Dame Addition to South Chicago ;" and that Sorin recognized the subdivision by making deeds of lots by that description.

The Bank, however, after Bowen's subdivision was made of the north quarter, foreclosed its trust deeds by sales under the powers therein contained, and the trustee therein made two deeds to Haines on September 4, 1876, which were recorded on September 6, 1876. On September 5, 1876, Bowen conveyed the north quarter to Haines by a warranty deed which was recorded on September 7, 1876.

When Onahan signed the agreement of January 29, 1876, Sorin was in Europe. Onahan, however, on that

very day wrote to Sorin telling him that he had made the agreement with Bowen, and giving a full account of all he had done in that behalf. Sorin replied by letter dated March 5, 1876. In this letter, which has been put in evidence since the former hearing of the cause in this Court, Sorin says to Onahan: "You will assure F. Flannigan of my good will. But, now, first of all he must aid you in obtaining from B. (Bowen) simple justice. I deeded him 116 acres. I cannot subscribe to any more. I am ready to deed him *again* the same against his own cession of all claims on section seven." What deed is here referred to ? Evidently, the deed of April 25, 1871, because Sorin had made no other deed than that to Bowen. His own construction of that deed is that he intended thereby to convey 116 acres. The evidence clearly explains the meaning of his letter.

The patent to Ashkum recited that the fractional section 7 contained 465.08 acres, one fourth of which is 116.27 acres. When Sorin deeded the north quarter to Bowen on April 25, 1871, he supposed he was conveying 116.27 acres. But a subsequent survey, as appears from a certificate of the Commissioner of the General Land Office at Washington dated July 29, 1871, showed that the fractional section contained 572.61 acres, one fourth of which is 143.15 acres. It is conceded that one Doyle acquired title to ten acres in the north quarter of the section by an adverse possession of twenty years, beginning in 1850. Accordingly, Bowen had made a deed to him of this ten acres, leaving 133.15 acres in the north quarter. Sorin claimed, that it was not just for Bowen to claim the 133.15 acres, as it was originally understood that he was only to have 116.27 acres. Sorin's contention was, that the difference between 133.15 acres and 116.27 acres, towit: 16.88 or 17 acres, belonged to him. The difference between Bowen and Sorin, which demanded "simple justice," related to this seventeen acres. The letter, however, of March 5, 1876, contains a plain admission by Sorin, that

he intended Bowen to have title to 116 acres when the deed of April, 1871, was made. If the object of that deed was to convey to Bowen only such part of the north quarter as Sorin then had title to, then the intention was that Bowen should have only 77½ acres, because Sorin then had title to only two thirds of the north quarter, supposed to be 116.27 acres, and two thirds thereof was only 77.50 acres. Such a construction is wholly inconsistent with the statement in his letter, that he had deeded Bowen 116 acres and was ready to deed it to him again.

We do not wish to be understood as receding from the findings made upon the former hearing, that the deed of 1871 did not have the effect of passing after acquired title, and that the power of attorney from Sorin to Onahan was technically insufficient to authorize Onahan to legally bind Sorin by the agreement of January 29, 1876, and that the circumstances referred to in our former opinion did not establish a ratification of that agreement by Sorin. But the deed and lease of 1871, and the trust deeds of 1873 and 1875, and the agreement of January, 1876, and its assignment, and the cancellation of the lease in January, 1876, and the subdivisions of 1876, and the letter of March 5, 1876, taken in connection with all the circumstances surrounding them, and looked at in the light of all the testimony in the record, establish clearly and beyond peradventure, that, for nearly six years before March 8, 1877, there was an understanding between Bowen first and the Bank afterwards on one side and Sorin on the other, that, when the latter, through his influence as a churchman, should obtain the outstanding title to one third of his own south three quarters of the section, he should at the same time obtain for Bowen or the Bank the same outstanding title to the north quarter thereof. This understanding was based upon a good consideration, because all the various transactions and arrangements hereinbefore detailed were based upon it, and were conducted and entered into because of it, and

in reliance upon it. That this was so is apparent from the conduct of the parties subsequent as well as prior to March 8, 1877. In September, 1877, V. A. Turpin was appointed receiver of said Bank in a proceeding begun against it in the Superior Court of Cook County, and thereafter in February, 1878, Haines conveyed to said receiver all the property acquired by him through the sales under said trust deeds and by the deed from Bowen, except one block which he had previously conveyed to the appellee, Shedd. He also assigned to the receiver said contract of January, 1876, then supposed to be as valid as that of 1877. The purchasers from Haines and from the receiver made their purchases in reliance upon the agreement of Sorin to perfect their titles as soon as it could be done.

Now what was the attitude of Sorin and Haines towards each other when they met on March 8, 1877, and entered into the contract of that date? Each of them was fully aware of the understanding that had existed for years in regard to getting in the outstanding title. Haines, as President of the Bank, held by assignment from Onahan the agreement of January, 1876, and Sorin knew this. Haines was aware of Sorin's claim in regard to the seventeen acres and was willing to recognize it, and Sorin was satisfied with this recognition of his claim. Accordingly they executed in duplicate the contract of March, 1877, as the same is above set forth. In view of the circumstances thus detailed, it was clearly the intention of this contract, that Sorin should obtain the outstanding title for the Bank in consideration of receiving seventeen acres out of the north quarter of the section.

In commenting upon the terms of the contract, we will advert to some of the objections made to it by counsel for appellant.

First, it is said that the contract was entered into for a mere temporary purpose, and that it was abandoned. The temporary purpose is alleged to have been the pro-

curement of the title by means of the appointment of a conservator for Edward DeSeille, the holder of the legal title to one third, who was said to be insane. There is some testimony that one of the methods proposed for obtaining Edward DeSeille's interest was to procure a conservator to be appointed, but there is nothing in the contract itself which limits Sorin to any one mode of getting the title, or to any particular time within which he should procure it. The language is : "as soon as said Sorin procures or causes to be procured a good title," etc. These words are broad enough to refer to deeds obtained from the heirs of Edward DeSeille after his death. The extension of the covenants to the heirs, administrators and assigns of the parties negatives the idea of an immediate accomplishment of the object sought through a conservatorship. The alleged fact of an abandonment is inferred from the circumstance, that Haines conveyed block 1 to Mrs. Shedd and the balance of the north quarter to the receiver. So far as the conveyance to the receiver was concerned, it was no evidence of a sale of the property. Haines was a mere trustee for the Bank, and so was the receiver. But the transfer of the title by Haines did not operate as an abandonment for the reasons already stated in the above quotation from our opinion filed on the second hearing, and because, by the express terms of the contract, its covenants are binding upon "the respective heirs, administrators and assigns of both of said parties." The word, "assigns," cannot be limited in its signification to assignees of the contract, but includes grantees of the land.

As it was contemplated that the Bank, through its president or receiver, would sell different parts of the land to different parties, the contract, which was one, could not be assigned to every grantee. It could have been assigned to the receiver for the benefit of his grantees, but this was not done, either because the contract of January 29, 1876, which was considered valid,

was assigned to Turpin, or because the duplicate copy of the contract of March, 1877, held by the Bank, was, in some unknown manner, taken from its vaults, and lost. The land in the hands of the assigns of Haines was charged with a trust in favor of Sorin for the seventeen acres, and whatever title might be acquired by Sorin, or his grantees with notice, was charged with a trust in favor of the grantees of Haines. We do not think that the first objection to the contract is a valid one.

Second, it is claimed in behalf of appellant that the contract is unilateral, and that it imposed no obligation upon Sorin, but that it was a voluntary matter with him whether he should convey the title obtained by him and receive the seventeen acres, or not. We cannot concur in this view. We think that, by the terms of the contract when fairly construed, Sorin undertook to act as the agent or trustee for Haines to convey the title to him or his grantees when it should be obtained. The contract states, that it is "mutually covenanted and agreed by and between said parties;" that is, that both parties covenanted, and not that one only was bound. Again, it states, that "the covenants herein are to extend to and be made binding upon the respective heirs, administrators and assigns of both of said parties." The word is not "covenant," but "covenants." What covenants are meant? No other covenants can be referred to than the covenant of Sorin to convey the outstanding interest when procured, and the covenant of Haines to convey the seventeen acres. The covenants could not be binding upon the heirs, administrators and assigns "of both of said parties," unless they were binding also upon "both of said parties" themselves. A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. (Bishop on Cont. sec. 417; *Bangor Furnace Co.* v. *Magill*, 108 Ill. 656). Courts will seek to discover and give

effect to the intention of the parties, so that performance of the contract may be enforced according to the sense in which they mutually understood it at the time it was made ; and greater regard is to be had to their clear intent than to any particular words which they may have used to express it.     (*Walker* v. *Douglas*, 70 Ill. 445 ; *Wilson* v. *Marlow*, 66 id. 385).     We are inclined to agree with the learned chancellor below, that, "just as soon as Sorin acquired that one third outstanding undivided interest, he held it as trustee for Haines, and those claiming under him."

Several other points are discussed in the briefs of counsel, but as these were all decided in favor of appellant, they need not be here considered.

The land in question was sold for taxes, and, under and by virtue of the sale, the sheriff of Cook county executed and delivered to the assignee of the purchaser at the tax sale a deed for the premises.   On the hearing the defendants offered in evidence the delinquent list, judgment, precept, and the sheriff's deed.   The evidence was offered for the purpose of establishing title under the act of 1835, which provides that actions brought for the recovery of lands, tenements or hereditaments of which any person may be possessed by actual residence thereon for seven successive years, having a connected title, in law or equity, deducible of record from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such lands for the non-payment of taxes, shall be brought within seven years next after possession being taken as aforesaid.   The appellees here assign as cross-error, that the court below refused to allow this deed to be introduced as evidence of the *prima facie* title which entitles the holder to protection under the law of 1835, because it did not appear that the sheriff had power under the law to make any deed until after an affidavit had been made, showing that the purchaser had complied with the con-

stitutional provision concerning notice, to the owner of the land, of such sale and of the time when the right to redeem from it would expire. We think that this ruling was correct. It conforms to our recent decision in *Burton* v. *Perry*, 146 Ill. 71, which, after a careful reconsideration, we are inclined to adhere to. We there held that, in order to show a *prima facie* title under said Act of 1835, notice, by personal service or by publication, to the owner must be shown before a tax deed of his land can be lawfully executed by a public officer.

This litigation has been pending in the courts nearly 14 years, and, as it is evidently a speculative suit, it is time that it should end. We are not altogether certain that Edward Sorin, who has not testified in this case, intended, by the agreement which he made on January 29, 1891, with appellant, as the same is set forth in *Torrence* v. *Shedd*, 112 Ill. 466, to authorize appellant to do anything more than seek to recover the 17 acres named in the contract of March, 1877. The appellant has, however, prosecuted this suit for the recovery of the whole of the one third interest acquired from the heirs of Edward DeSeille in disregard of that contract, and Sorin must be held responsible for the conduct of appellant, his agent and trustee. But the defendants below, appellees here, are not without fault. They have contented themselves with simply opposing appellant's right to such a partition as will give him said one third of the premises, and have filed no cross-bill, nor offered in their answers, or otherwise, to convey the 17 acres to appellant or Sorin. Since the case has come here the last time, both parties have petitioned for a rehearing, and a rehearing has been granted upon the applications of both. No further petition for rehearing can be allowed. After a full and careful consideration of the case, we make the following disposition of it : The decree of the Superior Court dismissing the bill for want of equity is reversed, and the cause is remanded to that Court, with

directions to permit the appellant to file an amended bill, within some time to be fixed by the court, therein asking for a specific performance of the contract of March 8, 1877, and therein offering to convey to appellees the title to the one third interest acquired from the heirs of Edward DeSeille in exchange for a conveyance of 17 acres by appellees to be selected by them and appellant or Sorin; or therein praying for a partition of the undivided seventeen acres out of the north quarter of said section in accordance with the usual practice in partition cases; and with further directions that, in case such amended bill shall not be filed within the time so limited, the decree of dismissal hereby reversed shall be re-entered, and stand as the final decree in the cause.

*Reversed and remanded.*

Mr. Chief Justice Craig, dissenting:

I am unable to agree with a majority of the court in the decision of this case. When the case was here before, it will be found, upon an examination of the opinion of the court then filed, (*Torrence* v. *Shedd,* 112 Ill. 466,) that three questions in dispute between the parties were then settled and determined. Upon this point the opinion reads: "It is contended in the original argument, as well as in the petition for a rehearing, among other things, first, that the Onahan contract of the 29th of January, 1876, was binding upon Sorin, and that appellant is consequently concluded by it; second, that the deed and contract between Torrence and Sorin of the 29th of January, 1881, are champertous and void; and third, that by virtue of Sorin's deed to Bowen of the 25th of April, 1871, appellant is estopped from setting up title to the land in question. We have carefully considered these positions, and * * * we are fully satisfied that said positions, and each of them, are not tenable, and they must therefore henceforth be regarded as conclusively settled against appellees." The opinion, after discussing other

matters, concludes: "The remanding order in question will therefore be, and is now, so modified and amended as to leave all questions arising upon the record, *except the three herein disposed of and eliminated from the case,* open for further consideration upon the rehearing of the cause in the Superior Court." From this statement it is plain that, so far as any claim was predicated upon the Onahan contract, that was adjudicated, settled and determined, and having been determined, the Onahan contract, and all rights under it, were out of the case, and I am aware of no authority under which that matter could again be re-opened and rights predicated thereon.

But it is said a letter was introduced on the last trial which was not before the court when the case was decided by this court. If a letter was put in evidence in regard to the Onahan contract, that was error, as the court had no right, under our former decision, to enter upon any consideration of matters connected with or growing out of the Onahan contract.

On the last hearing in the Superior Court appellees set up, as a defense to the relief claimed in the bill, the contract entered into March 8, 1877, between Haines and Sorin. Appellees did not undertake to show that Haines or his assigns had performed the contract, or that they were ready or willing to perform it, or that it imposed any obligation on them, but they claimed that as soon as Sorin acquired title to the undivided one-third of the quarter section, under the contract they became seized of that title, and Sorin was without relief in a court of equity. The court, on the hearing, dismissed the bill, holding, as I understand the decree, that under the Haines-Sorin contract Sorin became a trustee for Haines and his grantees, and when he acquired the undivided one-third of the title to the land from the heirs of Edward DeSeille, he could not assert that title in a partition proceeding, but appellees were entitled to that title. I do not concur in that view. At the time the contract

was made, Haines held the title to two-thirds of the north quarter, and by the express terms of the contract all that appellees can claim under the contract is, that in the event Sorin obtained the title to the other one-third he agreed to convey to Haines that title, and then Haines agreed to convey to Sorin, by perfect title, seventeen acres of the quarter. If this was the contract, the consideration, and the only consideration, for a deed from Sorin to Haines was, that Haines should convey seventeen acres to Sorin. Can Haines or his grantees compel Sorin to convey without payment of the consideration for which the conveyance was agreed to be made? I am aware of no principle of equity which would lend its aid to establish a rule of that character. The proposition is too plain to admit of argument, that where a vendor agrees to convey for a certain stipulated consideration to be paid by the vendee, the vendee cannot obtain a deed unless he has performed his part of the contract or has offered to perform. The relief claimed by appellees is but a specific performance of a contract. If they were substituted to the place that Haines occupied in the contract in respect to Sorin, then they were bound to assume Haines' obligation to Sorin. They cannot obtain the benefits of the contract without at the same time assuming the burdens imposed by it. If, then, they are demanding the specific performance of a contract, what is the law applicable to the case?

"It is the fundamental doctrine upon which the specific enforcement of contracts in equity depends, that either of the parties seeking to obtain the equitable remedy against the other must, as a condition precedent to the existence of his remedial right, show that he has done, or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the con-

tract according to its terms." Pomeroy on Specific Per. of Contracts, sec. 323 ; Fry on Specific Per. sec. 608. .

This court has held in a number of cases, that "no rule is better settled than that a party can not compel the specific performance of a contract, in equity, unless he shows that he himself has specifically performed, or can justly account for the reason of his non-performance." (*Scott* v. *Shepherd,* 3 Gilm. 483; *Stow* v. *Russell,* 36 Ill. 18; *Board of Supervisors* v. *Henneberry,* 41 id. 179; *Cronk* v. *Trumble,* 66 id. 428.) Here Haines parted with the title he held to the quarter of land long before Sorin obtained the title from Edward DeSeille to his one-third interest. Haines never offered to perform the contract, nor have his grantees ever offered to do so. This action for partition was brought in August, 1881. On the first hearing appellees did not set up this Haines-Sorin contract as a defense. It was not put in evidence or relied upon. Indeed, it was never heard of, as a defense, until the second hearing. Moreover, this cause has been pending about thirteen years, and appellees have never, at any time, offered to perform the contract, nor have they ever requested Sorin to perform it. Does this show that they have been ready and willing to do such acts as the contract requires, which is a condition precedent to a specific performance of the contract? Where there have been such delay and total disregard of the terms and conditions of a contract, a court of equity will never decree a specific performance.

But it is said, under the contract there was a relation of trust existing between Haines and Sorin. All that can be claimed of the contract is, that it was a mere written agreement, under which Sorin agreed, provided he acquired the outstanding title, to convey it to Haines, in consideration of which conveyance Haines agreed to convey to Sorin, by perfect title, seventeen acres of the land. Is there any trust created by such a contract? If so, a trust is created by every contract where one person

sells lands, by contract or bond for deed, to another. When Sorin obtained title to the land in question he held the title as owner. He held in his own right, and not in trust for any person. Of course, he was bound to comply with any contract he had made in regard to the land, with Haines or any other person; but that fact did not make him a trustee.

There is another branch of the decision of the majority of the court in which I do not concur. In 1867 the land in question was sold for taxes, and on the second day of September, 1869, under and by virtue of the sale, the sheriff of Cook county executed and delivered to John Forsythe, assignee of the purchaser at the tax sale, a deed for the premises. On the hearing, the defendants offered in evidence the delinquent list, judgment, precept, certificate of sale, affidavit filed on application for deed, and the sheriff's deed. The evidence was offered for the purpose of establishing title under the act of 1835, which provides that "actions brought for the recovery of any lands, tenements or hereditaments, of which any person may be possessed, by actual residence thereon, for seven successive years, having a connected title, in law or equity, deducible of record from this State or the United States, or from any public officer or other person authorized by the laws of this State to sell such land for the non-payment of taxes, * * * shall be brought within seven years next after possession being taken, as aforesaid." The affidavit for a deed did not conform to the requirements of the statute, and for this reason the court excluded all the offered evidence, and also all evidence introduced for the purpose of establishing possession, by actual residence, under such title, and this ruling is relied upon as error.

In *Collins* v. *Smith*, 18 Ill. 160, in discussing the meaning of the statute, "having a connected title, in law or equity, deducible of record," it was held that the statute had reference only to the source or beginning of title

under which the party claims, and not to each link in the chain. It is there said (p. 163): "If the foundation, source or beginning of the title under which the party claims and enters is of record,—that is, by grant of the State or the United States, or by grant of a public officer or other person authorized to sell for non-payment of taxes, or on execution, or under order, judgment or decree of a court of record,—then it is deducible of record to every person who can connect himself with it" by competent evidence.

In *Jandon* v. *McDowell*, 56 Ill. 53, as appears from the record, Duncan held title from the United States, and on March 19, 1839, he conveyed to the plaintiff. The deed was recorded on April 18 of the same year. Afterwards, and on November 7, 1840, Duncan made a second conveyance to Marvin Owen, and the defendant acquired title by *mesne* conveyances from Owen. In 1844 the defendant moved on the land, and resided thereon for a period of seven years, and in the action of ejectment brought against him by Jandon, who acquired the first conveyance from Duncan, said defendant set up and relied upon the statute of 1835 as a defense to the action, and the court held that he brought himself within the bar of the statute, and that the plaintiff could not recover. It is there said: "Defendant in error has shown a connected chain of title from the general government to himself, by patent and *mesne* conveyances. This is *prima facie* a title in fee, at law, and is the kind of title contemplated by the statute of 1835. It would be unreasonable to suppose the legislature only intended to embrace perfect titles, as they could always be successfully asserted in the courts, and hence require no aid from the Statute of Limitations. Had defendant in error held the first deed from Duncan, then his title would have been amply good without the bar of the statute. But only being apparently the better title, and being connected by deeds pur-

porting to convey the fee, it is the legal title contemplated by the statute."

In *Elston* v. *Kennicott*, 46 Ill. 187, the construction of the act of 1835 arose in a case where the defendant relied on a tax deed of 1842, which was offered in evidence without a judgment or precept. But while the court held that the deed was color of title, it was also held that the deed was not a *prima facie* title. It is there said (p. 210): "If the defendants had shown, not merely a tax deed, but also a judgment and precept directing the sale, they would doubtless have been within the statute, even though the tax title might not have been good as paramount title."

In *Pillow* v. *Roberts*, 13 How. 477, the construction of a limitation statute of Arkansas was before the court, which provided that all actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, and for lands sold at judicial sale, shall be brought within five years after the date of such sales. In passing on the statute the court said: "In order to entitle the defendant to set up the bar of this statute after five years' adverse possession, he had only to show that he and those under whom he claimed held under a deed from a collector of the revenue, of lands sold for the non-payment of taxes. He was not bound to show that all the requisitions of the law had been complied with, in order to make the deed a valid and indefeasible conveyance of the title." See, also, *Moore* v. *Brown*, 11 How. 424.

From these cases it is apparent that where a party relies on the act of 1835 he is not required to establish a valid title, but is only required to produce a *prima facie* title,—one that appears, on its face, to be good, but at the same time contains defects which might be sufficient to defeat it if relied upon as paramount title. If the title relied upon is a tax title, it is not necessary to prove

that all the steps required by law to make a valid title have been complied with, but if there is a judgment, a precept and deed, that will be sufficient, although all the requirements provided by the statute have not been observed. This construction is sustained by the cases cited, and it has been adhered to so long that it may be regarded as a rule of property, and ought not to be changed.

In the record before the court, as I understand it, complainant established title to an undivided one-third of the land in controversy, and in my opinion he was entitled to a decree for the land, except so far as any part may have been occupied, by actual residence, for seven successive years, under a connected title deducible of record from the State, as provided by the act of 1835.