## Collins & Burgie Co., Appellee, v. A. Silver, Appellant.

### Gen. No. 5,158.

1. CONTRACTS—*by whom construed.* Whenever on a trial before a jury the meaning of a written contract is brought into question, it is the duty of the court to construe and interpret the contract and to inform the jury what its lawful effect and meaning is.

2. CONTRACTS—*what considered in construction of.* In seeking to ascertain the intention of the parties to a written contract regard will be had to the practical construction, if any, which the parties by their conduct have given to the contract.

Assumpsit. Appeal from the Circuit Court of Boone county; the Hon. R. W. WRIGHT, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

W. C. DeWolf and W. L. Pierce, for appellant.

R. K. Welsh, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The Collins & Burgie Company is a corporation engaged in the manufacture of stoves at Marengo, Illinois. On October 5, 1907, its plant was partially destroyed by fire. On November 16, it entered into a written contract to sell certain scrap iron and machinery to A. Silver, a dealer in junk and scrap iron at Belvidere, Illinois. After the fire and prior to November 15, 1907, it leased from the Marengo Foundry and Machinery Company a new gasoline engine and temporarily placed it in its foundry for the purpose of running the blower. After the making of the contract for the sale of scrap iron and machinery, Silver desiring to have some screenings and small scrap iron melted into pig iron, contracted with the Collins & Burgie. Company to do this work. After Silver had removed most of the material and the contract had been made to melt the small scrap for the purchaser thereof, a disagreement arose between the parties; the company claimed that Silver had taken and was taking things not included in the written contract, and Silver then asserted that he had the right to take the gasoline engine alleged to be worth over $500. The company denied the right of Silver to take the gasoline engine and brought suit upon the contract for the balance thereon and the work it had done in melting down the scrap iron and for things it claimed Silver had taken that were not included in the contract. There was a verdict and a judgment for plaintiff for $462.24 which is evidently made up of the $278.34 due on the contract and the $183.90 claimed for melting the scrap iron. From that judgment the defendant appeals.

The court construed the contract of sale not to include the gasoline engine, and the only question raised is whether the court erred in construing the contract. It is claimed by appellant, first, that the language of the contract includes all the machinery in the plant, is unambiguous and that there is nothing to construe;

second, that if the court should construe the contract, then that the court should have construed the contract to have included this engine. The defendant paid on the contract $1,917.80; the plaintiff bought back of the material sold $103.86 under the terms of the contract, thus leaving a balance of $278.34 unpaid on the contract; the plaintiff claimed that $183.90 was due it for melting scrap iron under a subsequent contract between the parties.

The contract of sale signed by the parties purports to sell "The following machinery and scrap iron belonging to said company and now in the factory at Marengo. * * * All scrap iron and machinery in the store room and mounting room and melting room and in the north and south ends of the foundry except and reserving the big blower and cupola in the foundry and all tools belonging to said blower and cupola and all scrap iron on the south side of the main east and west runway in the foundry; said scrap iron lying west of barrels of stove facing and except all stove plate used by moulders moulding; the said Collins and Burgie Company also reserves * * * and have the privilege of buying the pig-iron just made by said Collins and Burgie Company at $10 per ton * * * and also have the privilege of buying back from said Silver any machinery the company may wish to keep at $15 per ton * * * said Silver agrees to pay for said machinery and scrap iron the sum of $2,300 as follows * * * The machinery said Collins and Burgie Company may wish to purchase of said Silver to be selected by November 25, 1907. There are two piles of scrap iron in the south end of the foundry. The pile lying in the southwest corner being reserved by said Collins and Burgie Company. * * *"

The evidence shows that the plaintiff selected and reserved scrap iron from that sold to the amount of $103.86; that the appellant early in December desired appellee to melt certain screenings and small scraps and asked the appellee on what terms it would do this

work. On December 7th, the appellee wrote a letter to appellant giving the terms, which included $2.50 per day for the use of the gasoline engine over which the controversy afterwards arose, and the re-melting was done by appellee using this gasoline engine which appellant now claims was his under the original contract made upwards of a month before. The appellant with his sons and employes were about the foundry removing the material purchased by appellant much of the time the gasoline engine was being used by appellee in melting the scrap under the contract with appellant, and agreed to pay appellee for its use. Naturally he would not pay $2.50 per day for the use of an engine that belonged to himself. The appellant claims that the melting was done under a different contract, but the finding of the jury shows that the jury found the contract as claimed by appellee. The gasoline engine was on the west side of the foundry, but neither in the north end or the south end although south of the main runway. It was neither scrap iron nor scrap machinery but was a new engine that did not belong to appellee when the contract of sale was made, and had been rented by appellee for use in connection with the blower in the foundry and was attached to the blower.

Whenever on a trial before a jury the meaning of a written contract is brought into question it is the duty of the court to construe and interpret the contract and to inform the jury what its legal effect and meaning is. Chickering v. Bastress, 130 Ill. 206; Danziger v. Pittsfield Shoe Co., 204 Ill. 145; Dunn v. Crichfield, 214 Ill. 292; Mich. Central Ry. Co. v. Osmus, 129 Ill. App. 79. "It is a familiar rule of constant application that courts give effect to all written instruments according to the ordinary, popular meaning of the terms employed when nothing appears to show they were used in a different sense and no unreasonable or absurd consequence will result from doing so." "There is, however, another well known rule of construction applied to written instruments, viz: that in construing

a written contract the court will endeavor to place itself in the position of the contracting parties, and read the instrument in the light of the circumstances surrounding them at the time it was made and of the object which they then evidently had in view, so that the court may understand the language used in the sense intended by the parties using it." Close v. Browne, 230 Ill. 228; Torrence v. Shedd, 156 Ill. 194; Whalen v. Stephens, 193 Ill. 121. If the "intention of the parties to a written contract is sufficiently apparent, effect must be given to it in that sense, though violence be done thereby to its words, for greater regard is to be had to the clear intent of the parties than to any particular words which may have been used in the expression of the intent." Dowiat v. People, 193 Ill. 264; Walker v. Douglas, 70 Ill. 445; Torrence v. Shedd, *supra*. "In seeking to ascertain the intention of the parties to a written contract regard will be had to a practical construction if any which the parties by their actions have given to the contract." Whalen v. Stephens, *supra;* Leavers v. Cleary, 75 Ill. 349.

When appellee, on December 7th, wrote to the appellant giving the prices it would charge for the different items of expense entering into the labor of melting scrap iron and included the use of this gasoline engine at $2.50 per day and appellant accepted that offer and the work was done for appellant with this engine, which it now claims to own and for which he contracted to pay $2.50 per day in the melting of small scraps, a reasonable construction was given to the contract which is binding upon the parties.

The acts of appellant resolve all possible doubt of the construction of the contract against himself. Under the contract, the appellee only sold the property belonging to itself and it would be a very unreasonable construction of the contract to include a new gasoline engine in the sale of scrap iron and scrap machinery. The trial court held properly that the gasoline engine was not included in the contract for

the reason that appellant so construed it, and it was only after trouble arose from his taking property he had not bought, that he seeks to make the present claim. The judgment is affirmed.

*Affirmed.*