### JOSEPH T. TORRENCE

### *v.*

### SUSAN M. SHEDD *et al.*

. *Filed at Ottawa September 27, 1884—Rehearing denied March Term, 1885.*

1.  CHAMPERTY — *of the essential elements to constitute champerty.*
There are two essential elements in every champertous agreement,—that is,
first, there must be an undertaking by one person to defray the expenses, in
whole or in part, of another's suit; and second, an agreement or promise on
the part of the latter to divide with the former the proceeds of the litigation
in the event it proves successful.

2.  SAME— *the particular case.* In a case of an absolute sale and transfer
of an undivided interest which the grantor has or may afterward acquire in
land in the adverse possession of others, the grantor having no suits pending
to recover his interest or any part of it, under an agreement that the grantee
shall institute legal proceedings in his own name and at his own expense, for
the purpose of recovering and establishing the title of the grantor so con-
veyed, no part of which is to be divided between them, but by which agree-
ment the grantee is to pay a given price per acre of the land recovered, and
nothing if the litigation proves unsuccessful, it was *held,* that both the essen-
tial elements to a champertous agreement were wanting, and that the transac-
tion was not void for champerty.

3.  A party owning an interest in land held and claimed adversely, may
sell the same for a consideration to be paid upon a contingency, as, upon a
recovery of the land by the grantee. The owner may convey his interest in
land even without any compensation, present or prospective, and he may
contract to receive nothing in case his interest can not be legally established
so that the purchaser may recover the same.

4.  SAME—*when and between whom the question of champerty may arise.*
If a conveyance of an undivided interest in land in the adverse possession of
others is made under a champertous agreement, the adverse claimants .can
not avail of the champerty as a defence to a proceeding by the grantee for a
partition. The question of champerty can not properly arise except in a con-
troversy between the parties to the alleged champertous agreement, or their
privies.

5.  CONVEYANCES—*construction of deed in connection with contempo-
raneous contract.* Where a deed for land is given, and at the same time a
written contract between the parties, grantor and grantee, is entered into
relating to the same subject matter, and providing for the consideration to
be paid, and upon what contingency, they will be treated, in arriving at the
intentions of · the parties, as but parts of the same transaction, and receive

the same construction as if their several provisions were embodied in one and the same instrument.

6. SAME—*deed construed—of its effect as to after acquired title.* A quitclaim deed contained the following language, in substance: That the grantee "has remised, released, etc., and by these presents does remise, release, alien, confirm, convey and forever quitclaim, all title which said party of the first part has in and to the following described lot, etc., situate, etc., to-wit, in such manner as he may and to the extent that he has heretofore acquired title thereto, the north quarter of," etc.: *Held,* that such deed passed only the grantor's interest in the land at the time of its delivery, and not any further interest he might thereafter acquire. The words, "in such manner as he may," had reference to the grantor's power to convey, or his authority to convey, and did not indicate an intention that his deed should become operative and effective as to any additional interest in the land he might afterward acquire.

7. · RATIFICATION *of unauthorized acts of agent.* The collection of a small portion of rents due from a tenant under a lease, after knowledge of the making of an unauthorized contract by the lessor's agent, is not a ratification of such contract for the sale of the lands; nor is the retention of the possession of the leased property obtained under such agent's contract, where the lessor had the right to declare a forfeiture and take forcible possession of the demised premises.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. CHARLES M. OSBORN, and Mr. GWYNN GARNETT, for the appellant:

Onahan had no authority to make the contract of January 29, 1876. His only power was to collect rents and take steps for the forfeiture of the lease. But even if authorized, Bowen had failed to perform his part of the same, and had no right to insist on the same, or have a specific performance, and the acts of Sorin, relied on, do not show any ratification of that contract.

The quitclaim deed of Sorin to Bowen was limited to the interest the grantor then had, and shows no intention to pass any after acquired title. The only ambiguity arises in the construction of the words, "in such manner as he may and

to the extent that he has heretofore acquired title thereto." The word "may" is used in its potential sense, and the phrase means, "in such manner as he has power to convey."

That the conveyance and contract of Sorin with the complainant are not champertous, see the following authorities: *Thompson* v. *Reynolds*, 73 Ill. 13; *Fetrow* v. *Merriwether*, 53 id. 275; *Gilbert* v. *Holmes*, 64 id. 548; *Coleman* v. *Billings*, 89 id. 187; *Campbell* v. *Evarts*, 47 Texas, 102; *Wellech* v. *Roberts*, 4 Dana, 172; *Ramsey* v. *Trent*, 10 B. Mon. 336; *Evans* v. *Bell*, 6 Dana, 479; *Scabey* v. *Ross*, 13 Ind. 117; *Sedgwick* v. *Stanton*, 4 Kern. 389.

But if the transaction was champertous, it was no defence to the suit, nor gave the defendants any rights. *Boone* v. *Clules*, 10 Pet. 219; *Coleman* v. *Billings*, 89 Ill. 187; *Cartwright* v. *Barnes*, 13 Fed. Rep. 326, sec. 4 of note; *Hillon* v. *Woods*, L. R. 4 Eq. 432; *Knight* v. *Bowyer*, 2 DeG. & J. 444.

Mr. FREDERICK ULLMAN, Messrs. JUDD & WHITEHOUSE, and Mr. WM. B. GIBBS, for the appellees:

Under the conveyance from Sorin to Bowen, the title subsequently acquired by Sorin has inured to the benefit of Bowen's grantees.

If the meaning of a deed is ambiguous or uncertain, it will be construed most strongly against the grantor. *City of Alton* v. *Transportation Co.* 12 Ill. 38.

If there was no covenant in this deed, yet, under and by virtue of the Onahan contract, the title subsequently acquired by Sorin has inured to the benefit of Bowen's grantees.

Sorin having availed himself of the benefits of that contract, would be estopped from saying Onahan had no authority to make it, and those claiming under him are also estopped.

Complainant's title is founded upon champerty, and this suit is purely one of speculation, and can not be maintained in equity. As to definition of champerty, see Coke on Littleton, 368 b; 1 Hawkins' Pleas of the Crown, chap. 27, sec. 7;

2 Chitty on Contracts, (11th Am. ed.) 996; 4 Blackstone's Com. 135.

It is not necessary that either party should be an attorney. *Hayney* v. *Coyne,* 10 Heisk. 341; *Barker* v. *Barker,* 14 Wis. 131; *Gilbert* v. *Holmes,* 64 Ill. 556; *Burke* v. *Green,* 2 B. & B. 520.

The fact that the Sorin-Torrence contract does not, in express terms, bind Torrence absolutely to carry on any particular suit, or, indeed, any suit at all, will not relieve the bargain of its champertous features. *Ball* v. *Warwick,* L. J. 50 Q. B. 382; *Hutley* v. *Hutley,* L. R. 8 Q. B. 112; *Stanley* v. *Jones,* 7 Bing. 369.

To constitute champerty it is not necessary that the contract should call for a division of, or payment out of, the land itself. A division of the proceeds of the land recovered by the suit will suffice to vitiate the contract. To maintain to have part of the land, or anything out of the land, or part of the debt, or other thing in suit, is champerty. Coke on Littleton, 368 b.

But even though the case at bar may not disclose a case of champerty strictly and in all respects within the common law definition of that offence, (though we utterly fail to see what is the lacking element, if any there be,) yet a title resting upon such a basis as appellant's, will not be recognized or enforced in a court of equity. *Prosser* v. *Edmunds,* 1 Y. & C. 481; *Gilbert* v. *Holmes,* 64 Ill. 556; *Wood* v. *Downs,* 18 Ves. *126; *Burke* v. *Green,* 2 B. & B. 522; *Cowry* v. *Caulfield,* id. 268; *Strachan* v. *Bradner,* 1 Eden, 224; *Powell* v. *Knowler,* 2 Atk. 224; *Reynell* v. *Spry,* 8 Hare, 222.

If it appears the suit, in its origin or progress, is affected by champerty, the court will dismiss the same. *Webb* v. *Armstrong,* 5 Humph. 381; *Morrison* v. *Deaderick,* 10 id. 342; *Hunt* v. *Lyle,* 8 Yerg. 142; *Vincent* v. *Ashley,* 5 Humph. 593; *Weedon* v. *Wallace,* Meigs, 286; *Greenman* v. *Cohn,* 61 Ind. 201; *Barker* v. *Barker,* 14 Wis. 131.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a decree of the Superior Court of Cook county, rendered in a *partition* suit commenced by Joseph T. Torrence, the appellant, against the appellees, Susan M. Shedd and others.

The suit involves the title to an undivided third of Bowen's addition to South Chicago, which is now occupied with family residences, shops, stores, manufacturing and business establishments of all kinds, the owners of which are all made parties to the bill. The land in controversy is a part of fractional section 7, township 37, north, range 15, east, and south of the Indian boundary line, the whole of which originally belonged to Louis De Seille, through whom all parties claim. Louis De Seille died intestate in 1837, leaving his sister, Melanie, and his two brothers, Charles and Edward, and another sister, who subsequently died intestate without issue, his only heirs. Melanie, Charles and Edward thus by inheritance became owners as tenants in common of the entire section, each having an undivided third interest therein. Prior to 1870, Charles died intestate, leaving nine children, who succeeded to his interest in the land, two of whom having died without issue, their interest devolved upon the surviving seven. On the 22d of August, 1870, six of these children, and their aunt, Melanie, by quitclaim deed conveyed their several interests in the premises to Edward Sorin, whereby he acquired thirteen twenty-firsts of the tract, leaving in the remaining seventh child of Charles (now known as Madame Vandersteichele) one twenty-first of the land, which she subsequently, on the 22d of January, 1873, by warranty deed, conveyed to Sorin. These deeds to Sorin were respectively recorded, in the order of their dates, on the 14th of July, 1871, and the 21st of February, 1874. The real owners of this land, up to the time of the execution of these deeds, had never taken possession of it, and it appears, from 1860 to

1868 or 1870, it was in part occupied by mere squatters, who, so far as we can see, had not the shadow of a title to it. Nevertheless, Elliott Anthony, acting for himself and James H. Bowen, as is said, on the 6th of August, 1868, took from one of these squatters, by the name of Thurston, a quitclaim deed in his own name for the whole of the section. On the 25th of April, 1871, Bowen, claiming to have an interest in the land, entered into an arrangement with Sorin, by which the latter was to quitclaim to him the north quarter, and Bowen was to quitclaim to Sorin the remaining three-quarters, and this was accordingly done, the deeds being both recorded on the 29th of July, 1871. The result of this transaction was to give Bowen a good title of record to two-thirds of the north quarter, less the one twenty-first of it held by Madame Vandersteichele. Sorin, of course, took nothing by Bowen's deed, as the latter had nothing to convey, hence Sorin's interest in the south three-quarters remained just the same as before, namely, a two-thirds interest, less the small proportion owned by Mrs. Vandersteichele, just mentioned. Bowen having acquired the interest just stated, in the north quarter, assumed exclusive control over it. In the fall of 1873 he conveyed it in trust to secure a loan of $75,000, and in 1875 he again conveyed it in trust to secure an additional loan of $50,000. The property was sold under both trust deeds, to John C. Haines, and deeds were executed to him by Smith, the trustee, and were duly recorded on the 6th of September, 1876. The property was purchased by Haines, as president of the Fidelity Savings Bank, he having no personal interest in the purchase. Previous to these transactions, and only a few months after the interchange of deeds between Bowen and Sorin, in April, 1871, as above stated, Sorin leased to Bowen the south three-quarters of the section, at an annual rental of $5000 for the first five years, and of $10,000 a year thereafter. The rent under this lease having become largely in arrear, Sorin, in 1875, being about

to go to Europe, executed to William J. Onahan a power of
attorney, by which he gave the latter full power and control
over the property in question during his absence, for the pur-
pose of making leases, collecting rents, etc., particularly that
which was due from Bowen.   On the 29th of January, 1876,
Onahan, assuming to act under this power of attorney, exe-
cuted to Bowen, in Sorin's name, an instrument in writing,
whereby Sorin promised and agreed, in substance, that should
he thereafter, by deed or release, obtain a greater or better
title to said north quarter, he would, by further assurances,
or deed or deeds, convey the same to Bowen.   This contract
on the same day was assigned to Haines, as president of the
Fidelity Savings Bank.   In 1877, the Fidelity Savings Bank
having become insolvent, upon a bill filed for the purpose of
winding up its affairs, Virginius A. Turpin was appointed
receiver of all its property and effects, and upon the order of
the court, John C. Haines conveyed to Turpin all his interest
in the property in dispute, and which he had purchased at
the trustee's sale, as above stated, the ·deed bearing date
February 15, 1878, and was recorded on the 23d of the same
month.   Haines also assigned to Turpin the contract exe-
cuted by Onahan to Bowen under the power of attorney from
Sorin, above mentioned, and this contract was exhibited to
purchasers by the receiver in making sales of the property,
as a muniment of title.   In 1876, and before the sales by
Smith under the trust deeds, Bowen made out, acknowledged,
and caused to be recorded, a plat of this property, entitled,
"James H. Bowen's addition to South Chicago," most of
which was sold to various parties, in lots and blocks, after it
passed into the hands of the receiver.   While these transac-
tions were going on, it was evidently generally known there
was an outstanding interest in this property which had not
been formally secured by Bowen, or Sorin, through whom
Bowen claimed, the exact character and extent of which were
well known to both of them, and doubtless many others.

Edward De Seille, the owner of this outstanding one-third interest, was a resident of Europe, and was reputed to be insane, by reason of which it seems to have been understood his interest in the property could not be acquired until after his decease.

It is clear the facts thus far stated show title in Bowen, and those claiming through him, to but two-thirds of the north quarter of this land, less one twenty-first part thereof, and that the remaining third interest continued in Edward De Seille till the time of his death, (which occurred at his home, in Europe, November 17, 1878,) when the same devolved on his heirs. On the 6th of March, 1879, Melanie De Seille conveyed to Sorin, by warranty deed, the entire section in question, which, of course, passed to him one-half of the third interest therein which she inherited from her brother Edward at the time of his decease. Such being the condition of the title, Sorin, by quitclaim deed bearing date January 12, 1880, for the expressed consideration of $12,000, conveyed to the appellant all the interest he then owned, *or might thereafter acquire,* in the said north quarter of said section. As a matter of fact, the $5000 mentioned as the consideration of the conveyance was not paid as therein stated. The real consideration appears from the following agreement, which was entered into at or about the time of the delivery of the deed:

"Whereas, the Rev. Edward Sorin has conveyed to the undersigned, Joseph T. Torrence, the north quarter of section 7, south of the Indian boundary line, in township 37, north, range 15, east of the third principal meridian, in Cook county, Illinois, the interest so conveyed being an undivided interest in said premises; and whereas, legal proceedings will be necessary to establish title to any interest under said deed; and whereas, the consideration mentioned in said deed is merely formal, and not the real consideration, but the

real consideration is hereinafter in this contract mentioned: Therefore, said Torrence agrees with said Sorin to pay to him, said Sorin, the sum of $400 for each and every acre of land which he, the said Torrence, may recover of the tract of land above described under said deed, through and by legal proceedings, negotiations, compromises, or otherwise.

"Witness the hand and seal of said Torrence, this 29th day of January, 1881.

JOSEPH T. TORRENCE,  [Seal.]<br>E. SORIN.         [Seal.] "

Shortly afterwards, the parties thereto executed the following explanatory and supplementary agreement:

"It must be remembered that General Torrence promises to settle the cases of the Shedd Brothers and Taylor, and also that when the one-quarter north of section 7 should be settled with the Fidelity Bank, he would fix, himself, in justice and honor, what is coming to me over and above the nominal, or not real and final, sum of $400 per acre, taking into account all the expenses that had been made to secure the return of the number of acres recovered.

"NOTRE DAME, *February 18, 1881.*

E. SORIN,<br>J. T. TORRENCE. "

After the execution of the above deed to appellant, and the agreement and supplementary agreement between him and Sorin, just recited, the latter acquired, by purchase from the children of Charles De Seille, the remaining heirs of Edward De Seille, all their interest in the section above mentioned, which appellant claims inured to him by virtue of Sorin's deed of the 12th of January, 1880, above mentioned.

The court below, upon the hearing, entered a decree dismissing the bill, holding, first, that the deed and contract between Sorin and complainant were champertous and void; and second, that by virtue of Sorin's deed to Bowen, of the

25th of April, 1871, above mentioned, complainant is estopped from setting up title to the land in question.

We do not think the decree can be sustained on either of these grounds. With respect to the first, little need be said. It is true, as contended by appellees, the deed from Sorin to appellant, and the contemporaneous contract between them relating to the same subject matter, must be treated as but parts of the same transaction, and consequently should receive the same construction as if their several provisions were embodied in the same instrument. Viewed in this light, we fail to discover anything that warrants the conclusion the agreement was or is champertous. Blackstone, in his Commentaries, (vol. 4, page 135,) defines champerty to be "a bargain with a plaintiff or defendant *campum partire*, to divide the land or other matter sued for, between them, if they prevail at law, whereupon the champerter is to carry on the parties' own suit at his own expense." This definition is adopted by Chitty, in his work on Contracts, page 745. Benjamin on Sales, (section 528,) defines it to be "a bargain by which a person agrees to carry on a suit, at his own expense, for the recovery of another's property, on condition of dividing the proceeds."

It will be perceived from these definitions, which are substantially the same, there are two essential elements in every champertous agreement: First, there must be an undertaking by one person to defray the expenses, in whole or in part, of another's suit; and second, an engagement or promise on the part of the latter to divide with the former the proceeds of the litigation, in the event it proves successful. We fail to discover either of these elements in the case before us. As we understand the transaction, there was an absolute sale and transfer by Sorin to Torrence of the undivided interest which the former then had or might thereafter acquire in the land. The land was then in the adverse possession of others, Bowen and his grantees having the legal as well as the equi-

table title to two-thirds of it, less the small interest of Madame Vandersteichele,.as already shown.   On the death of Edward De Seille, (November 17, 1878,) his third interest passed by inheritance to the seven surviving children of his brother Charles, and his sister Melanie,—the latter taking one-half, being a sixth of the whole tract.   On the 6th of March, 1879, she, as we have already seen, conveyed the entire section, by warranty deed, to Sorin, which conveyance, of course, passed to him her one-sixth interest in the whole tract.   Assuming this sixth interest did not pass by way of estoppel to Bowen and· his grantees, as is claimed by them, (a question we will presently consider,) Sorin continued to be the owner of it until the time of his conveyance to Torrence, when it passed to the latter.  .The remaining half of Edward's third, or one-sixth of the tract, was then outstanding in the seven children of Charles, which, in view of Sorin's relations to them, the parties doubtless expected he would be able to obtain from them, by way of compromise, or otherwise, on easy terms. Sorin, at this time, had no suit pending for the recovery of this land, or any part of it, nor ͺdid the agreement between them contemplate the commencement of any such suit by him.   The agreement, however, did contemplate legal pro-ceedings to be commenced and carried on by Torrence, for the purpose of recovering and establishing title in the latter to the one-third interest in the land, but no part of this interest, when so recovered or established, was to be divided between him and Sorin.   If the prosecution of suits were necessary for the recovery of this interest in the land, they were, so far ·as. this record shows, to be instituted and prosecuted by Tor-rence, at his own expense, and the land, when recovered, if recovered at all, was to be his, and his alone,—thus clearly showing an entire absence of both the elements essential to a champertous. agreement.   It is true the consideration to be paid by Torrence was graduated. by the number of acres he should succeed in recovering in the manner proposed.   Sorin

was to have $400 an acre for the land actually recovered or
secured, and if nothing was recovered or secured, of course
he was to receive nothing. In other words, the consideration
to be paid for the land was made to depend upon a contin-
gency,—a thing, we have no doubt, the parties had a perfect
right to do. The amount of compensation which Sorin was
to receive for the interest in the land conveyed by him to
Torrence, is, under the facts in this case, a matter with
which appellees have no concern. If Sorin had conveyed to
Torrence without any consideration, present or prospective,
it would in nowise have strengthened the position of appel-
lees. But even conceding the agreement to be champertous,
we do not think appellees can avail themselves of it as a
defence to this suit. While the cases are not all in accord
on this question, we think the decided weight of authority
sustains the position that champerty can not be made avail-
able as a defence in a mere collateral proceeding, as is sought
to be done here. *Fetrow* v. *Merriwether*, 53 Ill. 275; *Boone*
v. *Clules*, 10 Pet. 219; *Hillon* v. *Woods*, L. R. 4 Eq. 432;
*Knight* v. *Bowyer*, 2 DeG. & J. 444; *Coleman* v. *Billings*, 89
Ill. 187. This question can not properly arise except in a
controversy between the parties to the alleged champertous
agreement, or their privies.

We come now to the second ground of the decision of the
court below,—namely, that Sorin, and those claiming under
him, (which, of course, includes appellant,) are, by virtue of
the deed of the former to Bowen of the 25th of April, 1871,
estopped from setting up title to the land in controversy.
That deed is shown to be lost, and the record thereof de-
stroyed by the great Chicago fire of 1871. We agree with
appellees that the most satisfactory proof of its contents is
found in the testimony of Franklin L. Chase, who saw the
deed and appears to have preserved a copy of it. The deed
in question was prepared from a printed form of an old fash-
ioned quitclaim deed. The copy taken by Chase shows the

erasure of certain words in the written as well as printed parts of the deed. The material part of the deed, as shown by this witness, so far as the present question is concerned, is as follows:

"Has remised, released, aliened, confirmed, ~~conveyed and forever quitclaimed~~, and by these presents does remise, release, alien, confirm, convey and forever quitclaim, all ~~right~~, title, ~~interest, claim and demand~~ which said party of the first part has in and to the following described lot, piece or parcel of land, situated in Cook county, Illinois, to-wit: *In such manner as he may, and to the extent that he has heretofore acquired title thereto, the north quarter of fractional section 7, south of the Indian boundary line, in township 37, 15, and all the* ~~*estate*~~*,* ~~*right*~~*, title,* ~~*interest,*~~ *claim and demand* ~~*whatsoever*~~ *of the party of the first part, to the only proper use, benefit and behoof of the said party of the second part, forever.*"

The contention of appellees is, and so the court below held, that by the terms of this deed Sorin not only conveyed to Bowen his present interest in the land, but that it was his intention, as well as that of the grantee, that the deed should become operative and effective as to any additional interest in the land Sorin might subsequently acquire, and hence it is further claimed that Sorin and those claiming under him are estopped from setting up any claim to it. This conclusion is drawn solely from the expression in the deed, "*in such manner as he may,*" the contention being, the phrase is elliptical, and that to make it complete, the word *acquire* should be added after the word "may,"—that is, "in such manner as he may" acquire. We think the manifest grammatical as well as logical relation which the expression, "in such manner as he may," bears to the other members of the sentence in which it occurs, is inconsistent with the construction contended for by appellees. It is evident the expression, grammatically, refers to and qualifies the verbs, "has remised," has "released," etc.,—that is, the grantor has remised, re-

leased, etc., the premises "in such manner as he may,"—or, in other words, in such manner as he is authorized to. To say that one "has remised, released, etc., in such manner as he may acquire, or may hereafter acquire," is certainly not very perspicuous English, and we perceive no reason for adopting so questionable a construction. The phrase under consideration is certainly an unusual one to be found in a deed, but in the light of the record before us, its use in the connection mentioned is neither strange nor inappropriate. Sorin was a Catholic priest, and belonged to one of the orders of that church, and his official title was that of "Superior General of the Congregation of the Holy Cross," and he is so characterized in conveyances made by and to him in respect to this very land, including the deed now under consideration. Whether, by the rules of the order of which he was "superior general," there were any limitations upon his power to dispose of real property, does not fully appear, but from the circumstances stated it is highly probable the expression, "in such manner as he may," had reference to something of that character. At any rate, we think it very clear the word "may" is used, in that connection, in its potential sense, and has a direct reference to the grantor's power or authority to convey.

With respect to the Onahan contract, it is not seriously contended, if at all, that it was authorized by the power of attorney held by him of Sorin, and we fail to perceive anything in his conduct, after he had knowledge of its execution, that can be regarded as a ratification of it, or that estops him, or those claiming under him, from asserting their title to the property in controversy. At the time of making the Onahan contract, Bowen was, as we have already seen, in arrears for rent, under his lease from Sorin of the south three-quarters of the section, in the sum of $28,000, and it is claimed that because Sorin collected a small portion of this sum from Bowen's assignee in bankruptcy after having notice

of the Onahan contract, he thereby ratified it. We do not think there is any force in this position. Nor do we think the fact that Sorin obtained possession of the leasehold premises by means of the Onahan contract, and failed to restore the premises after notice of the existence of the contract, can be treated as a ratification of it. Bowen had wholly failed to perform any of the conditions of the lease, and, as just stated, at the date of the contract was $28,000 in arrears, having never paid anything under the lease, and Sorin was then, by its very terms, authorized to declare a forfeiture, and take forcible possession of the leased premises. In fact, Bowen had become bankrupt, and forfeited all his rights under the lease, and Sorin, in taking possession, did nothing more than he was-entitled to, without any consent or permission on the part of Bowen. Under the circumstances, Sorin had the right to take possession, and his doing so did not forfeit his right to the rent then in arrears.

The decree of the Superior Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

                                               *Decree reversed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: It is contended in the original argument, as well as in the petition for a rehearing, among other things, first, that the Onahan contract of the 29th of January, 1876, was binding upon Sorin, and that appellant is consequently concluded by it; second, that the deed and contract between Torrence and Sorin of the 29th of January, 1881, are champertous and void; and third, that by virtue of Sorin's deed to Bowen of the 25th of April, 1871, appellant is estopped from setting up title to the land in question. We have carefully reconsidered these positions, and after having availed

ourselves of all the additional lights thrown upon the subject by the petition for a rehearing, and given it our best thought, we are fully satisfied that said positions, and each of them, are not tenable, and they must therefore henceforth be regarded as conclusively settled against appellees. The Superior Court, contrary to the conclusion we have reached, sustained the last two of these positions, and, in fact, based its decree exclusively upon them, without passing upon other defences interposed by appellees. The opinion heretofore filed in the case is directed chiefly against the grounds upon which the Superior Court based its decree, and consequently the other questions discussed were regarded of a subordinate character, and were therefore not so thoroughly examined as they otherwise would have been.

Pending the petition for a rehearing, a number of the appellees, including those who seem to occupy the most favorable position so far as the defence of the Statute of Limitations is concerned, have filed a written stipulation disclaiming any desire on their part to have a rehearing granted. While, under these circumstances, we do not think it would be proper to grant a rehearing, yet, in view of the importance of the case, and the fact the questions, other than those above specified and definitely disposed of, were not expressly passed upon by the Superior Court, the remanding order will be so amended as to authorize a reconsideration of those questions. The remanding order in question will therefore be and is now so modified and amended as to leave all questions arising upon the record, except the three herein disposed of and eliminated from the case, open for further consideration upon the rehearing of the cause in the Superior Court. With this modification of the opinion the rehearing is denied.

*Rehearing denied.*