WILLIAM RULNICK ET AL. *vs.* MAX SHULMAN ET AL.

First Judicial District, Hartford, January Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The common law of champerty and maintenance does not obtain in this State. The question in each case is whether the transaction in question is opposed to public policy.

Where a tract of land has been subdivided with restrictions imposed upon each lot in accordance with a general scheme of development, a lot owner may, upon a sufficient showing of changed conditions affecting the purpose and effect of the restrictions, obtain relief therefrom in an action against the other owners.

In 1920, N, who had subdivided a tract of land and had sold a number of the lots subject to certain restrictions, was himself enjoined by a decree of the Superior Court from erecting a building in violation thereof and from disposing of any of the remaining lots except upon the same terms. In 1925, the heirs of N, then deceased, conveyed one of the lots to the plaintiffs under an agreement, contained in the purchase money mortgage, that if the plaintiffs, who had full knowledge of the circumstances and wished to erect a building of a character forbidden by the injunction, succeeded in obtaining a judgment releasing the lot from the restrictions, the mortgage should then become effective and that, otherwise, the heirs of N would accept a reconveyance of the property and would return to the plaintiffs the portion of the consideration which they had paid in cash. *Held* that this agreement was not contrary to public policy and that the plaintiffs had the right to maintain an action for the relief which they were seeking.

 ⸰ Argued January 7th—decided April 11th, 1927.

ACTION for a judgment relieving the plaintiffs from the operation of an injunction restraining the violation of certain building restrictions upon real estate owned by them, brought to the Superior Court in Hartford County and tried to the court, *Wolfe, J.;* judgment for the defendants, and appeal by the plaintiffs. *Error and new trial ordered.*

*Frederick H. Waterhouse,* with whom, on the brief, were *Josiah H. Peck* and *Isidor E. Finkelstein,* for the appellants (plaintiffs).

*Albert S. Bill,* with whom, on the brief, was *Albert C. Bill,* for the appellees (defendants).

HINMAN, J.   Prior to August 8th, 1919, Jonathan G. D. Newton had owned a large tract of land on both sides of Newton Street, extending north from Park Street, in the city of Hartford, platted it into building lots, and sold a number of them.   Each of the deeds given by him provided that the grantees should not erect upon any part of the land conveyed any dwelling-house containing more than two tenements, or worth less than $5,000, or to be used for store or business purposes.   The defendants in this action are present owners of these lots.   In 1919, owners of lots so conveyed brought an action against Newton alleging that he had represented to them and their predecessors in title that no buildings were to be erected upon any of the lots on Newton Street other than in conformity to the above-mentioned restrictions, but that Newton was erecting, on one of the lots, a house of more than two tenements, and threatened to build other similar houses and to sell portions of the land without the restrictions.   The plaintiffs prayed for and, on March 19th, 1920, obtained a judgment that Newton be enjoined from "selling, granting, conveying or disposing of any of the lots on Newton Street, . . . between Park Street and Capitol Avenue Extension, except subject to the following restrictions . . . 'the grantee or grantees will not, at any time, erect or cause to be erected upon any part of the lands conveyed, any dwelling-house which, when completed, shall contain more than two tenements or which shall be worth, at

a fair valuation, less than the sum of $5,000, or to be used for store or business purposes,' " and further enjoining Newton and his assignees from erecting, on any of the lots, any building except in accordance with the restrictions. This judgment is still in force. Jonathan Newton died in 1921, and on September 17th, 1925, his widow and children as distributees conveyed to the plaintiffs a lot at the extreme southern end of the tract, being on the corner of Park and Newton streets. The plaintiffs, previous to and at the time of the transfer to them, had full knowledge of the restrictions upon the use of the lot, and of the judgment, and the transfer was made subject to certain written conditions and stipulations (contained in a mortgage note given by the plaintiffs to their grantors), as follows: "This note is secured by a mortgage on a certain lot of land . . . concerning which lot there is a dispute as to the proper building restrictions; and the makers hereof agree to institute a suit at their own expense, in order to have final judgment rendered so that they . . . may build upon said lot an apartment house with stores; the construction of said building and interest at the rate of six per cent. per annum shall commence immediately upon the rendering of such final judgment in favor of the makers; but in the event that said final judgment shall be adverse to the makers herein, said makers shall execute a deed to the payees hereof of the premises by which this note is secured by mortgage, and the payees hereof agree to return the sum of $500 to the makers hereof, which sum . . . the makers . . . have this day paid to the payees as part consideration for the purchase price of said lot." This agreement was accepted in writing by the Newton heirs, and this action has been brought "in pursuance of the terms and conditions set

forth in the agreement." The foregoing facts are found by the trial court.

The complaint in this action also alleged that land in the vicinity is used for business purposes, that since 1920 the character of Park Street has radically changed to a business section, and that thereby the purpose of the restrictions, so far as they affect the plaintiffs, has failed. The plaintiffs desire to erect a building facing on Park Street, containing stores on the street level floor and tenements on the upper floors. The object of this action is to relieve the plaintiffs' lot from the operation of the 1920 injunction.

The sole conclusion stated by the court, is "that the title of plaintiffs to the premises in question is merely a conditional and speculative one, and in view of their knowledge of the restrictions upon the land and of the judgment of this court in relation thereto, and of conditions and circumstances surrounding the purchase of said land by them, there do not exist in their favor equities of such a character as to entitle them to the favorable consideration of the court, in seeking the removal or modification of the restrictions in question." The soundness of this conclusion is attacked by the two reasons of appeal.

It is not open to question that the Newton heirs, the plaintiffs' grantors, had they not conveyed the lot to the plaintiffs, might apply for and, upon a sufficient showing of changed conditions affecting the purpose and effect of the restrictions, obtain relief therefrom in an action against the other lot owners. *Armstrong* v. *Leverone,* 105 Conn. 464, 136 Atl. 71, and cases cited. The plaintiffs, if they had taken an unconditional title, subject to the restrictions imposed by the judgment of 1920, unquestionably might seek, on the same grounds, removal or alleviation of these restrictions. The disability attributed by the trial court to

these plaintiffs must, therefore, depend upon the presence, in the transaction, of the agreement above set forth to the effect that they shall institute a suit for modification, as to this lot, of the building restrictions and that, in case of an adverse judgment, they may reconvey the property to their grantors and obtain a return of the consideration paid.

The common law of champerty and maintenance has never been adopted in this State as applied to civil actions, and the true and exclusive inquiry and test of the right of these plaintiffs to seek relief from a court of equity is whether the transaction upon which they rely is opposed to public policy. *Metropolitan Life Ins. Co.* v. *Fuller,* 61 Conn. 252, 260, 23 Atl. 193; *Richardson* v. *Rowland,* 40 Conn. 565; *Rogers* v. *Hendrick,* 85 Conn. 260, 82 Atl. 586; *Hyland* v. *Crofut,* 87 Conn. 49, 55, 86 Atl. 753; *Perry* v. *Puklin Co.,* 100 Conn. 104, 123 Atl. 28.

We perceive no controlling distinctions between the situation here presented and that which was held in *Metropolitan Life Ins. Co.* v. *Fuller, supra,* not to be violative of public policy. There, as here, the transaction was, in a sense, speculative, in that it involved the result of a court action; the assignee was to bear the expense of the suit and assignor and assignee were to share the benefits accruing from a favorable outcome; the assignee retained, by a separate instrument, the right to reassign. Both arrangements involved "the sale of an interest to which a right to sue is incident," not "a mere right to sue."

No respect is suggested or discernible in which the transaction so tends to interfere with the public good as to contravene public policy, nor can we apprehend any unjust consequences accruing to the defendants by reason of the substitution of the present plaintiffs for the Newton heirs as applicants for relief. Since,

it is found, the plaintiffs took title with full notice of the restrictions, any defense which would have been available against their grantors will be equally potent against them. No reason appears why it is not as fair, and at least as "useful and convenient," to test the question of the continuance of the restrictions at the instance of these plaintiffs as by the more numerous and diversely interested Newton heirs. Conveyances and contracts resembling, in essential features, the transaction now before us, have been held not to be even subject to the imputation of champerty or maintenance, in States in which that doctrine is recognized and given effect as depriving of the right of relief. *Pratt* v. *Pierce*, 36 Me. 448, 58 Amer. Dec. 758; *Torrence* v. *Shedd*, 112 Ill. 466; *Nichols* v. *Bunting*, 10 N. C. 86; *McSwain* v. *Atlantic Coast Lumber Corporation*, 96 S. C. 155, 80 S. E. 87; *Henley* v. *Hotaling*, 41 Cal. 22, 27.

The situation of these plaintiffs, as disclosed by the record, is not such as, by reason of violation of public policy, to deprive them of the right to resort to a court of equity for the relief which they seek, and the conclusion to the contrary is erroneous. It appears to be undisputed that the judgment rendered was predicated entirely upon this conclusion and that there was no determination of the main issue presented by the pleadings—whether such a change has occurred in the condition and uses of the neighboring property, affecting the purposes of the limitations imposed upon the use of the lot in question, as to entitle the plaintiffs to an abrogation or modification of the restrictions.

There is error and a new trial is ordered.

In this opinion the other judges concurred.