### THE CITY OF BRIDGEPORT ET AL. *vs.* THE EQUITABLE TITLE AND MORTGAGE COMPANY.

Third Judicial District, New Haven, June Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

The three remedies for the collection of unpaid taxes—by levy under § 1295 of the General Statutes; by tax lien under §§ 1300, 1308 and 1302; and by action under § 1313 as for the recovery of a debt—are concomitant and cumulative subject only to the provision of § 1313 that a substantial recovery by action under that section or by enforcement of lien shall bar a recovery by any other method.

Taxes upon the lists of 1920 and 1921 were assessed by the city of Bridgeport against real estate owned by M and S and, after nonpayment within the time limited by statute, liens were placed upon record. Thereafter by mesne conveyances, each of which was made subject to mortgages and unpaid taxes, the property was transferred to the sister of the second mortgagee who, without consideration, quitclaimed her interest to the defendant corporation, the capital stock of which was owned principally by her brother. In 1923 the defendant petitioned the common council in the names of M and S but without their knowledge or consent for an adjustment of the taxes, and that body, acting illegally and without power to do so, ordered an

Bridgeport *v.* Equitable Title & Mortgage Co.

abatement of the taxes and a release of the liens, upon partial payment of the amounts due. In 1926 the tax collector issued an alias tax warrant against M and S, who were financially responsible, for the balance thus unlawfully abated and they, having made a payment on account to avoid incarceration, then entered into an arrangement with the official tax attorney and the collector whereby the latter authorized counsel, retained and paid by M and S, to represent the city in the present action for a cancellation of the releases, and a reinstatement and foreclosure of the liens. *Held:*

1. That the choice of methods for the collection of the taxes was optional with the city, and that it was not obliged to exhaust its personal remedy against M and S before proceeding with the enforcement of the liens.

2. That, under all the circumstances, the action of the city in electing to pursue the liens worked no unfairness or injustice upon the defendant.

3. That the arrangement between the city officials and M and S concerning the maintenance of the present action was not opposed to public policy, since the tax attorney remained in complete supervision and control, and there was no conflict of interest involved.

4. That the real, though indirect, interest of M and S in the outcome of the action, justified their participation.

5. That a cancellation of the releases, which were unquestionably illegal and void, will afford sufficient relief to the city without a reinstatement of the liens.

Argued June 10th—decided August 3d, 1927.

ACTION for a judgment reinstating certain tax liens upon real estate of the defendant, alleged to have been invalidly released, for a decree of foreclosure, and for other relief, brought to the Court of Common Pleas for Fairfield County where the plaintiffs' demurrer to the answer was sustained as to the second, third and fourth defenses and overruled as to the fifth defense, and the issues later raised by the pleadings were reserved by the court (*Huxford, J.*), upon an agreed statement of facts, for the advice of this court.

*Jonathan Grout* and *David Goldstein,* with whom, on the brief, was *Edward L. Kelly,* for the plaintiff.

*Thomas M. Cullinan,* for the defendants.

HINMAN, J. Upon this reservation the following questions are presented: (1) Were the taxes legally abated? (2) If the taxes were not legally abated, then does the attempted abatement, under the facts as stipulated, preclude the collection thereof? (3) Were the tax liens legally released? (4) If the tax liens were not legally released, then has the Court of Common Pleas, under the facts as stipulated, power to reinstate and to decree a foreclosure of the same? (5) If the tax liens were not legally released, should the Court of Common Pleas, under the facts as stipulated, reinstate and decree a foreclosure of the same?

The defendants, in argument, concede, as upon this record the law would require, that the taxes upon which the liens in question are predicated were not legally abated by the city of Bridgeport, that the attempted abatement does not preclude the collection thereof, that the tax liens were not legally released, and that the Court of Common Pleas has power to reinstate the liens and, unless deterred by the equitable considerations which are urged, to decree foreclosure thereof. The only present controversy, therefore, relates to the fifth question. This is, in effect, the issue raised by the fifth and only present special defense, in which the defendants assert that to compel the defendants to pay the taxes, as is sought by this action, would be inequitable and an abuse of the powers of a court of equity.

The stipulated facts which are deemed to be pertinent to the present inquiry are: On September 1st, 1920, Morris Slachter and Marcu Marcus were the owners of the real estate described in the complaint, subject to a first mortgage of $17,000 in favor of a bank, and a second mortgage for $11,000 in favor of

defendant Jacob W. Gerber. Slachter and Marcus continued to own the equity in the premises until December 24th, 1921. On the grand list of October, 1920, a regular tax of $719.44 and a special tax of $149.38 were assessed, on this real estate, against Slachter and Marcus, and on the list of 1921 a regular tax of $766.80. These taxes not having been paid within the time limited, March 31st, 1922, January 1st, 1923, and March 1st, 1923, respectively, the tax collector caused to be duly recorded certificates of lien upon the property.

On December 24th, 1921, Marcus conveyed his interest in the premises to Abraham Sinrod, and on January 10th, 1922, Slachter and Sinrod transferred the property to one A. B. Reich; both conveyances were made subject to the mortgages and taxes on the lists of 1920 and 1921. Thereafter and before February 28th, 1922, Gerber, the second mortgagee, brought an action to foreclose his mortgage, and on that date Reich, to avoid foreclosure and for the sum of $250 paid by Gerber in order to avoid the time and expense of foreclosure, transferred the premises to Estelle Gerber, sister of Jacob W. Gerber, subject to mortgages and taxes. Gerber's purpose in having title taken by another was to prevent a merger of his second mortgage interest and the fee. On August 30th, 1922, Estelle Gerber, without any consideration, quitclaimed her interest in the premises to the defendant the Equitable Title and Mortgage Company, of which corporation the defendant Jacob W. Gerber was and is the majority stockholder. This corporation took and held the title for the same purpose as had Estelle Gerber.

On or about September 4th, 1923, the defendant corporation, in the names of Marcus and Slachter, without their knowledge or consent, filed with the city clerk a petition "for adjustment of taxes on the lists of 1920,

1920 special, and 1921." Thereafter, in consequence
of action taken by the common council upon that peti-
tion, the corporation paid $250 of the tax on the list
of 1920, $100 of the special tax, and $250 on the tax
on the list of 1921, and the city attempted to abate the
balance of these taxes and filed releases of the several
tax liens.

On or about August 15th, 1926, the plaintiff Chal-
lenger, as tax collector, signed and delivered to a proper
officer an alias tax warrant against Slachter and Mar-
cus, and they, to avoid threatened incarceration
in jail pursuant to the command of the warrant, paid
$300 of the amount of the taxes remaining unpaid.
Thereafter Marcus and Slachter employed attorneys to
represent them, which attorneys are authorized by the
tax attorney and the tax collector of the city of Bridge-
port, in so far as they have power to grant such author-
ity, to represent the plaintiffs in this action, on the
understanding that their compensation will be paid
by Marcus and Slachter. These attorneys drew the
complaint, but it was signed by the tax attorney. No
further action has been taken on the tax warrant, pend-
ing the outcome of this suit. The premises in question
consist of land with a building thereon containing two
stores and ten three-room apartments, and are worth
$25,000. None of the defendants, nor Marcus or
Slachter, are poor and unable to pay the taxes.

The main contention of the defendants is that the
resort on the part of the plaintiffs to the remedy of
foreclosure of the tax liens instead of relying entirely
on the right to collect the balance of taxes from Mar-
cus and Slachter involves such manifest inequity that
the court should not countenance and effectuate it.
We do not understand the defendants to dispute that
the statute provides three distinct and concomitant
remedies or methods for the collection of taxes, viz.,

levy under § 1295 of the General Statutes; tax lien under § 1300, continuance of same under § 1308, and foreclosure under § 1302; and action, as for the recovery of a debt, under § 1313. *Cromwell* v. *Savage,* 85 Conn. 376, 377, 82 Atl. 972; *Sperry* v. *Butler,* 75 Conn. 369, 372, 53 Atl. 899; *Albany Brewing Co.* v. *Meriden,* 48 Conn. 243, 246. Neither can it be seriously questioned that these remedies are cumulative, subject to the condition provided in § 1313, that a substantial recovery by action under that section or by enforcement of lien shall bar a recovery by any other remedy. The defendants concede that if foreclosure of the liens were the only remedy open to the city "a court of equity would undoubtedly extend its authority, as far as possible, to save the municipality from the loss of these taxes."

The claimed disabling vice appears, then, to lie in the fact that the city, by its proper officers, has elected to pursue this remedy, instead of collecting further from Marcus and Slachter under the alias warrant or recovering from them under § 1313. The defendants' contention is to the effect that since Marcus and Slachter were the owners of the property when the taxes were assessed and the taxes were, in consequence, assessed in their names, the remedies for collection as against them should be exhausted before resort is had to the lien. We find nothing in the statutes, the decided cases, or the agreed facts compelling, or persuasive of, such a conclusion. Our attention is called to the statement in *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 524, that "the party against whom a tax is assessed is directly liable for the tax and his duty [to pay it] is clear." But the fact that these parties were directly liable for the taxes does not require the city to exhaust its remedies against them before suing others. The choice and order of remedies

was optional with the city. It is to be noted also that the opinion immediately continues, as follows: "But other parties may acquire an interest in real estate who are not directly responsible to the public for the taxes, and who enter into no contract in respect to them, and yet may be so situated that it is their duty to pay the taxes. For instance, a purchaser of the property or of the equity of redemption subject to a tax lien; he may be compelled to pay the taxes in order to protect his own title. In such cases it is for his interest to do so. Necessity and interest combine to make it, in a broad sense, his duty. . . . So too a mortgagee is under no legal obligation to pay the taxes, certainly as between himself and the mortgagor; and yet he may be compelled to pay them in order to protect his mortgage." It is his duty to pay in case of default by the mortgagor. We perceive no such inherent difference between the respective obligations of parties so holden to pay a tax as, even in equity, to require that the remedies against the party against whom the tax is directly assessed be exhausted before resort may be had to the security afforded by the lien.

It is to be noted, also, that it appears from the agreed facts that the successive transfers of the real estate were made subject to taxes, although the respective grantees did not expressly assume and agree to pay them. It is an inescapable inference that these grantees took with notice that taxes were unpaid, and the further inference that the existence and amount thereof were taken into account in fixing the consideration for these transfers is surely as permissible as the contrary assumption upon which the defendants appear to proceed. The significance of the action taken by the defendant corporation to secure partial abatement of the taxes and its payment of the part not abated is not to be overlooked in this connection. In such a

case, as well as in one in which payment of taxes is specifically assumed by the grantee, fairness would suggest that collection be made from the grantee, by resort to the lien, rather than from the grantor, whose moral obligation to pay has been passed on to subsequent owners. Furthermore, while Gerber, who confessedly is the sole defendant in actual interest, complains that this proceeding works a hardship to him, it is to be noted that he presumably exercised the privileges of a free agent when he took a mortgage in which, so far as appears, there was no expressed condition for the payment of taxes by the mortgagor, and took title, vicariously, to the equity subject to the obligation of and potential liens for past due and unpaid taxes. *Sperry* v. *Butler, supra,* p. 375. We are unable to find in the situation here presented, warrant for attributing to the tax officials such a disposition and desire to unduly favor Marcus and Slachter at the expense of the defendants, or such unfairness, injustice or abuse of discretion in the course of action adopted by them as to justify us in condemning it as inequitable.

The defendants also claim that the plaintiff city has no real interest in this action, because Marcus and Slachter are financially able to pay the taxes; that the action was not authorized by the common council; that the attorneys appearing for the plaintiffs have not been employed or appointed by the city; that the entire proceeding is a subterfuge on the part of Marcus and Slachter; and that these considerations are sufficient to deprive the plaintiffs of the right to resort to a court of equity. The record does not support these contentions. The city's interest is obvious and its right to pursue this remedy has been hereinbefore justified. By § 6 of No. 299 of the Special Acts of 1925, it is made the duty of the tax collector of Bridgeport to proceed to collect all claims for taxes which are

designated by the tax attorney as collectible, and of the tax attorney to collect all amounts due to the city secured by liens which have been filed for more than three years. We take it that if the tax attorney had, for reasons of necessity or convenience, entrusted the actual conduct of this litigation, subject to his supervision and control, to other attorneys, permissibly employed by him and paid by him or the city, no equitable infirmity could be claimed therefrom. He would not have been warranted in authorizing other attorneys to prosecute this action unless he, himself, remained in complete control of it and of the attorneys in their conduct of it, and unless there was no possible conflict of interest between the city and the parties who employed the attorneys, but so far as the record discloses neither of these requirements was violated in the course taken. The tax officials authorized the action and the conduct of the case by these attorneys, and the tax attorney is an attorney of record therein, retaining control of its management. The absence of any conflict of interest is apparent, but it is claimed that Marcus and Slachter have no such interest in the matter as to render their intervention and assistance legitimate. As to this, even in jurisdictions where the common law of champerty and maintenance prevails the general rule is that any real interest, great or small, certain or uncertain, in the subject-matter of the suit of another, affords a just reason to the party who has such an interest for participating in the suit and exempts him from the charge of illegal maintenance because of his giving aid to the suitor. 11 Corpus Juris, p. 250, § 38. In this State the only test is public policy. *Rulnick* v. *Shulman,* 106 Conn. 66, 70, 136 Atl. 865. Here, Marcus and Slachter obviously have a real though indirect interest in the outcome of the action, and their participation does not violate any recognized principle of public

Stoll *v.* Judd Co.

policy. *Gilman, Son & Co.* v. *Jones*, 87 Ala. 691, 701, 5 So. 785, 7 id. 48, 4 L.R.A. 113.

Our answer to each of the first three questions reserved is no. The fourth we answer yes, but suggest that, since the releases of the liens are unquestionably illegal and void, reinstatement of the liens is unnecessary, and cancellation of the releases of record would be a sufficient and preferable adjudication and within the scope of the prayers for relief. As to the fifth, we advise that,, as above indicated, we find no equitable obstacle to the consideration of this action nor to rendition of a judgment of foreclosure of the liens.

In this opinion the other judges concurred.