CHARLOTTE W. RICE *v.* JOHN S. FARRELL ET ALS.

MALTBIE, C. J., AVERY, JENNINGS, ELLS and DICKENSON, JS.

Argued June 4—decided July 28, 1942.

*Charles M. Lyman,* for the appellant (plaintiff).

*David J. McCoy,* for the appellees (defendants).

MALTBIE, C. J. On August 8, 1929, the plaintiff, sole owner of a business conducted under the trade name of Frank J. Rice & Co., loaned the defendant Farrell $600 and he executed a mortgage to the plaintiff under that trade name to secure a note representing the loan. The mortgage deed contained the usual covenants against incumbrances and of warranty, without exception. On November 25, 1930, the plaintiff, in the name of Frank J. Rice & Co., executed and delivered to the Mechanics Bank of New Haven a document in the form of a quitclaim deed of all the right, title and interest in the mortgage note and the land described in the mortgage, and also delivered to it the note indorsed in blank. This assignment was as collateral security for certain indebtedness owed the bank. Subsequently the bank commissioner became receiver of the bank. On September 25, 1931, the plaintiff sold the business of Frank J. Rice & Co., with all its assets and good will, to Mancel W. Rice, who thereafter continued to conduct it under the same trade name. Subsequently the business was incorporated and later Mildred Rice filed a certificate that she was owner of the business conducted under the trade name of Frank J. Rice & Co.

Farrell failed to pay the taxes assessed against the property and, on February 17, 1939, the city began a foreclosure proceeding based on its liens in which Farrell and the bank commissioner were made defendants. The action went to judgment and law days were fixed for the defendants, but no one redeemed. Thereafter Janet Troxell filed a petition with the city clerk of the city, offering to purchase the property

for $700; and the plaintiff and Farrell each filed a petition offering to pay the city the amount due it on account of the taxes and expenses of foreclosure, in return for a deed of the property. The board of aldermen of the city passed a vote empowering the mayor of the city to convey the premises to Farrell by quitclaim deed in consideration of $1000, which was some $250 more than the amount found due on account of the unpaid taxes and cost of foreclosure. In accordance with this vote, on April 19, 1940, the property was conveyed to him by quitclaim deed upon payment of the consideration stated. The next day he conveyed the property by quitclaim deed to the defendants James T. and Ellen McHugh.

Mrs. Troxell still desired to secure the property. She had a conference with the plaintiff and offered to finance a suit to be instituted by the plaintiff to recover the property, on the understanding that it would cost the plaintiff nothing if she was unsuccessful, but if she was successful Mrs. Troxell would buy the property for a sum less the expenses of the litigation. What the purchase price was to be does not appear. The plaintiff agreed, and her attorney offered the bank commissioner $50 for the note and mortgage. Permission for the sale was secured from the court, and the note and mortgage were purchased in the name of the plaintiff with money furnished by Mrs. Troxell and for the sole purpose of assisting her in her attempt to secure the property. An assignment of the mortgage and the indebtedness it was given to secure was made to the plaintiff. She then brought this action to foreclose the mortgage, with a second count, later abandoned, alleging fraud and conspiracy on the part of the defendants in the purchase of the property. From a judgment for the defendants, the plaintiff has appealed.

The plaintiff relies on the cases of *Middletown Savings Bank* v. *Bacharach*, 46 Conn. 513, 524, and *Goodrich* v. *Kimberly*, 48 Conn. 395, in which we held that an owner of property who bought it at a tax sale resulting from his failure to pay taxes on it could not set up the title so acquired to defeat a mortgage he had given on the premises. Whether, in view of the foreclosure of the tax liens, to which the bank commissioner as the then owner of the mortgage in his capacity of receiver was a party, that doctrine would apply in this case we have no need to consider. See *Zandri* v. *Tendler*, 123 Conn. 117, 193 Atl. 598, 111 A. L. R. 1280. The defendants claim that, even if it would apply, the plaintiff is not entitled to recover because of her inequitable conduct.

The defendants point to several circumstances in connection with the plaintiff's dealing with the mortgage which they claim to be inequitable, but, aside from the effect of the agreement between her and Mrs. Troxell for the institution of the action and the purchase of the property by the latter, none of them are so related to the matter in litigation in this foreclosure proceeding that they can properly be regarded. *Orsi* v. *Orsi*, 125 Conn. 66, 69, 3 Atl. (2d) 306. With reference to that agreement it is true, as the plaintiff claims, that the common-law doctrines of champerty and maintenance as applied to civil actions have never been adopted in this state, and the only test is whether a particular transaction is against public policy. *Rulnick* v. *Shulman*, 106 Conn. 66, 70, 136 Atl. 865. We have held that a sale of an interest in property to which a right to sue is an incident is not violative of public policy; *Metropolitan Life Ins. Co.* v. *Fuller*, 61 Conn. 252, 260, 23 Atl. 193; *Hyland* v. *Crofut*, 87 Conn. 49, 55, 86 Atl. 753; *Rulnick* v. *Shulman*, supra; *Sleeping Giant Park Asso., Inc.* v. *Connecticut Quar-*

*ries Co., Inc.,* 115 Conn. 70, 80, 160 Atl. 291; and see *Rogers* v. *Hendrick,* 85 Conn. 260, 270, 82 Atl. 586; and that, if a party has "any real interest, great or small, certain or uncertain, in the subject-matter of the suit of another" which was not acquired as the result of an agreement to aid in the maintenance of the suit, it is not against public policy for him to render such aid. *Bridgeport* v. *Equitable Title & Mortgage Co.,* 106 Conn. 542, 550, 138 Atl. 452; see Restatement, 2 Contracts, § 543; 14 C. J. S. 368, § 26. The case in our reports most like the one before us is *Richardson* v. *Rowland,* 40 Conn. 565, where, applying the law of New York but expressing our concurrence, we held not against public policy an agreement growing out of the proposal of one having a direct interest in certain litigation to another that, if he would advance the money necessary to pay off a mortgage and superintend and pay the expenses of the litigation, the former would give the latter one-half the net avails. The situation, however, where one having a right he desires to assert asks another to assist in the necessary litigation differs essentially from that where a person having no interest in the subject matter of the controversy instigates legal proceedings and offers to pay the expenses in return for a benefit he is to receive if the litigation is successful. Beyond sustaining agreements falling within the principles of these cases, we have never gone.

The Restatement, 2 Contracts, § 542, states the law to be that, aside from such situations, "a bargain to endeavor to enforce a claim in consideration of a promise of a share of the proceeds, or of any other fee contingent upon success, is illegal, if it is also part of the bargain that (a) the party seeking to enforce the claim shall pay the expense incident thereto, or that (b) the owner of the claim shall not settle or discharge

it." With this statement, at least as applied to laymen, we agree. The public policy underlying it is well stated in *Casserleigh* v. *Wood,* 119 Fed. 308, 314, 56 C. C. A. 212; see also *Ames* v. *Hillside Coal & Iron Co.,* 314 Pa. 267, 272, 171 Atl. 610. The plaintiff seeks to have the finding corrected to state that Mrs. Troxell's purpose was partly to secure a benefit to the plaintiff, whom she felt to have been ill used. The basis of that correction is solely the testimony of Mrs. Troxell which the trial court may not have believed. However, even if this fact should be added to the finding, it would not justify the agreement before us, because, while a stranger to litigation may properly assist a poor person to assert his rights, such assistance is not permissible where the stranger is to share in the proceeds of the action. Restatement, 2 Contracts, § 541; 11 C. J. 249, § 36; 14 C. J. S. 368, § 24. The agreement before us was one against public policy and therefore, as between the parties to it, unenforceable.

Ordinarily an agreement against public policy in the nature of maintenance or champerty is of no avail to a defendant. *Perry* v. *Puklin Co.,* 100 Conn. 104, 110, 123 Atl. 28; Restatement, 2 Contracts, § 544; 11 C. J. 270, § 103; 14 C. J. S. 382, § 38. The usual agreement of that kind is that a stranger to the litigation will assist one having a pre-existing right to enforce it in court in return for a share in the proceeds of the action. The right, to enforce which the action is brought, does not originate in the illegal agreement nor is proof of that agreement necessary to its establishment and the agreement is therefore not so related to the action that the court will regard it. See *Vaszauskas* v. *Vaszauskas,* 115 Conn. 418, 423, 161 Atl. 856. The agreement before us presents a different situation. The plaintiff, as owner of the mortgage, was entitled only to the amount due upon the loan;

*New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 666, 25 Atl. (2d) 50; but the intent of the agreement was that the plaintiff should obtain, not that sum, but the mortgaged property itself, that it might be transferred to Mrs. Troxell. That is to say, the purpose was not primarily to assist the plaintiff in asserting her right to recover the debt but by taking advantage of the possible necessitous circumstances of the defendants to secure something more, immediately for her benefit but ultimately for that of Mrs. Troxell. More important is the fact that when the plaintiff sold the business to Mancel W. Rice and transferred to him all its assets she lost any remaining interest she might have had in the mortgage and the only right she can now assert had its origin in the purchase of the mortgage from the bank commissioner. That purchase was made in partial consummation of the agreement with Mrs. Troxell. The right the plaintiff is asserting originated in the illegal agreement, and it would be improper for the court to enforce it in this action. *Gest* v. *Gest,* 117 Conn. 289, 296, 167 Atl. 909; *Vaszauskas* v. *Vaszauskas,* supra; *Hilton* v. *Woods,* L. R. 4 Eq. 432, 439; *The Clara A. McIntyre,* 94 Fed. 552, 557; *Johnson* v. *Van Wyck,* 4 App. D. C. 294, 325; *Hannigan* v. *Italo Petroleum Corporation,* 37 Del. 180, 183, 181 Atl. 4; 11 C. J. 271, § 104b; 14 C. J. S. 383. The trial court was correct in its conclusion that to give relief to the plaintiff in this action would be inequitable and we do not need to consider the other conclusions to which it came.

There is no error.

In this opinion the other judges concurred.